## No. 19,500.

JAMES F. DONOHUE AS AIRLINES CAB SERVICE *v.*
THE PUBLIC UTILITIES COMMISSION, ET AL.
(359 P. [2d] 1024)

Decided February 27, 1961.   Rehearings denied March 13 and
March 20, 1961.

Messrs. JONES, MEIKLEJOHN & KILROY, Mr. ALVIN J. MEIKLEJOHN, JR., Mr. EDWARD T. LYONS, JR., for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN J. CONWAY, Assistant, for defendant in error Public Utilities Commission.

Messrs. MURRAY, BAKER & WENDELKEN, for defendant in error Pikes Peak Automobile Company.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

IN the interest of brevity we will refer to plaintiff in error as protestant; to the Public Utilities Commission of Colorado as the commission; and to Pikes Peak Automobile Company as the applicant. The controversy involves the rights claimed by the protestant to serve as a common carrier in providing transportation to and from the airport at Colorado Springs, without interference from the applicant.

For a full understanding of the history of this controversy, and some of the facts which are pertinent to the matters which now command our attention, we refer to our opinion in *Public Utilities Commission of the*

*State of Colorado, et al. v. James F. Donahue, doing business as Airlines Cab Service,* 138 Colo. 492, 335 P. (2d) 285. We set forth here only those factual matters which are relevant and which do not appear in the opinion to which reference is made. By that decision it was determined that the commission committed error in lifting restrictions on the transportation services which had previously been imposed upon the applicant under certificates issued to it. We there held that:

"The PUC denied the request for a certificate granting a new authority and yet by lifting the restrictions, it did by indirection grant authority which it held could not be granted directly. In this it was in error, and the judgment of the district court so holding is correct."

Petition for rehearing in that action was denied March 2, 1959. Four days thereafter the applicant filed with the commission its application for a certificate of public convenience and necessity, seeking authority to carry on a service identical to, and in competition with, the business of protestant who now holds certificate of convenience and necessity No. 1305 issued by the commission July 28, 1939. Thus the applicant sought to secure by the issuance of a new certificate the same result which had followed the action of the commission in erroneously lifting the restrictions upon its previous authorized service.

Notwithstanding the previous action of the commission was held by the district court to be erroneous, the applicant continued its unauthorized activity in active competition with the protestant, during the three-year period which was consumed in that litigation.

The new application for a certificate of public convenience and necessity was met by the appearance of protestant Donahue who had already been subjected to this unauthorized competition from the applicant for a period of approximately three years. The commission conducted hearings on the application and the protest, and finally disposed of the same by granting the appli-

cation. Upon appropriate statutory proceedings in the district court the order of the commission was upheld. The cause is here on writ of error to review that judgment.

The applicant called six witnesses in support of its application. We will consider briefly the nature of the testimony given by each of them.

The Vice President of applicant, Mr. Alenius, testified concerning the experience of the company in serving the airport following the making of a contract with the city of Colorado Springs (set forth in some detail in our former opinion). He described the equipment owned by applicant which would be available for service to and from the airport. He stated that to the best of his knowledge applicant had covered the airport for every flight, incoming and outgoing, during the period prior to the final decision of this court in the former case. The gross revenue derived from the operation in 1956 and 1957 was approximately $18,000.00 per year. For 1958 it was $16,000.00. He stated that as to profit or loss the operation was just about a "break-even" proposition financially. (It must be borne in mind that all of this was an illegal operation carried on in unwarranted competition with the authorized service of protestant.)

The City Manager of Colorado Springs, Mr. Biery, testified concerning the contract entered into between the applicant and the city purporting to grant certain privileges to the former. He believed that due to expansion of the airport and increased air travel, additional facilities were needed and that the contract was made for the purpose of raising revenue for the city and answering that need. His testimony amounted to little more than the expression of opinion. He was "satisfied" that the applicant could render satisfactory service. He stated that the city had not made a determination that protestant was not capable of rendering satisfactory service, and admitted that the city took all means that it could to further the business of applicant against that

of protestant. The city's effort to thwart the business of protestant in favor of applicant included the filing of a lawsuit against the protestant, which is still pending in the trial court.

Mr. Schuenight, passenger service agent for Continental Air Lines, had little to say which had any probative value concerning the issues before the commission. His evidence consisted largely of statements of opinion on matters involving no expert knowledge, all of which were based on hearsay.

Mr. Dodge, an employee of Continental Air Lines, testified that he was familiar with the operation of the applicant at the airport, and that it was "very satisfactory." He did not call the protestant to arrange for pickups of outgoing passengers because "it was a matter of occasional late arrivals at the airport which, of course, would delay our departures." He did not give one single incident of "late arrival" caused by the fault of protestant notwithstanding that he stated he kept a "daily check" of his "on-time performance" which he said was a "very important thing with air lines." He could recall no specific complaints concerning the service provided by protestant, but said, "there were complaints," however the record is entirely silent as to the character and number thereof or when they were received. He also acknowledged that "complaints" were had concerning the service of applicant. We find nothing of substantial evidentiary value in this testimony. It is apparent that he prefers the applicant over the protestant, but very little legal evidence is shown by the record to justify this preference.

The only testimony given by Mr. Saponas, the local manager of Braniff Air Lines, was that in 1955 there were a few times (he didn't say how many) when different flights arrived at the same time and passengers had to wait for transportation to the city.

Robert Parvin, assistant airport manager, testified to the increase in air travel from 1951 through 1958. He

said that the service rendered (illegally) by the applicant during the three-year period was satisfactory. He could not testify concerning the adequacy of the service supplied by protestant prior to the unauthorized entry of applicant on the scene.

On behalf of the protestant seven witnesses were called: the protestant, his wife, and five passengers who have consistently used his service and found it satisfactory and excellent. Because we believe the showing on behalf of the applicant to be palpably insufficient we will not lengthen this opinion by setting forth in detail the evidence supporting the protest.

The commission entered findings which included the following:

"We cannot say from the record before us that Protestant Donahue in 1956, was furnishing an adequate service, nor can we say that his service is adequate at this time. The representatives of the airlines voice the protest that there is a lack of cooperation, and the attitude of protestant Donahue on the witness stand bears this out. The serious question confronting us: Is there sufficient business to warrant two certificated carriers? It appears that applicant, in its operation, was efficient and endeavored to give the public service, while, on the other hand, protestant has transportation available. It is our best judgment that we should not consider the mere fact of a monopoly as alone sufficient to justify the granting of authority for a new service where, as here, it appears already to have contributed to deficiencies in the present service. It may be assumed that it will continue to operate to the disadvantage of the public, and may itself be looked upon as a circumstance lending to justify the authorization of an added service."

The question properly before the commission was whether as of the date of the new application the public convenience and necessity required the services of an additional common carrier. The reference in the findings to a "lack of co-operation" with the airlines is with-

out any support whatever in the evidence, and not one word of evidence fixes responsibility for any lack of cooperation on the part of protestant. It was the duty of protestant to render service to the traveling public and this might incidentally involve cooperation with the airlines. The finding by the commission that, " * * * nor can we say that his [protestant's] service is adequate at this time," falls far short of a finding of failure reasonably to supply the need. There is not sufficient competent evidence in this record to warrant any such finding. The finding which is called the "serious question" confronting the commission, namely, "Is there sufficient business to warrant two certificated carriers?" amounts to a repudiation of the basic concept upon which the structure of Public Utility Commission powers is based, namely, that of regulated monopoly.

In *McKay v. Public Utilities Commission,* 104 Colo. 402, 91 P. (2d) 965, we said: " * * * No permit as a private carrier can be granted by the commission if in its opinion, based upon proper evidence, such private-carrier operation impairs the efficient public service of an authorized common carrier serving the same territory or over the same highways or routes. * * * "

In *Denver & Rio Grande Western Railroad Co. v. Public Utilities Commission,* 142 Colo. 400, 351 P. (2d) 278, we quoted with approval the following statement:

"The theory of regulated monopoly is based upon the fact that, except as shown, it is better to have fewer utilities who can make a reasonable return upon their investments and thus give the public better and more expeditious service, than to throw the doors open so that, although the number of operators may be increased, service to the public may become disorganized."

All the evidence before the commission offered for the purpose of proving that the applicant had rendered satisfactory service related to an operation conducted by applicant without legal authority to operate. One cannot read this record and understand the history of

the case and escape the conclusion that the illegal activities of applicant had a most devastating effect upon the ability of protestant to carry on as he was obliged to do as the legally authorized carrier. One cannot escape the conclusion that the activities of the applicant abetted as they were by the conduct of representatives of the city of Colorado Springs, were designed and intended to pressure the protestant out of business. This court will tolerate no such result. In our first opinion in this controversy, *Public Utilities Commission v. Donahue,* supra, we said:

"In seeking to resolve this matter, we must bear in mind that the PUC has wide discretionary powers in determining the demands of 'public convenience and necessity.' We must also bear in mind that a person serving the public under a certificate of public convenience and necessity is a part of the public, and public convenience and necessity requires that he be treated fairly and that no new or extended operations be authorized which endanger or impair the operations of existing carriers contrary to the public interest."

Under the certificate of public convenience and necessity held by protestant he had the exclusive right to furnish scheduled service to and from the airport. He was and still is obligated to furnish this service. His property used in the performance of those duties is dedicated to that end, and he may not even withdraw from said service without permission of the PUC. *Highland Utilities Company v. Public Utilities Commission, et al.,* 97 Colo. 1, 46 P. (2d) 80.

We are mindful of the fact that the applicant's entire case of rendering "satisfactory service" is based upon activity which we have held to be without legal authorization. Some courts of last resort have held that such evidence cannot be the sole basis upon which to base the granting of a certificate of public convenience and necessity.

In *D. F. Bast, Inc. v. Pennsylvania P.U.C.*, 397 Pa. 246, 154 A. (2d) 505, we find the following:

"On the other hand, where the violation is one resulting from a deliberate disregard of the certificate limitations or the law, then, of course, the wrongdoer should not profit from his own deliberate wrong.

\* \* \*

"Under such circumstances, the Commission's issuance of the certificate cannot be based on the reception of evidence of \* \* \* illegal and unlawful operation, even if it be assumed arguendo, that such evidence was sufficient to support the authorization. Excluding such testimony as it must be excluded under the circumstances, the record fails to disclose the substantial evidence required to sustain the action of the Commission; and the Commission's order \* \* \* must be reversed."

And in *Alspaugh v. Public Utilities Commission*, 146 Ohio St. 267, 65 N.E. (2d) 263, that court affirmed the action of the commission in denying a certificate because of the illegal operations of the applicant. The opinion contains the following:

"Granting an unlimited and unrestricted transportation license to one who has been guilty of the wilful and defiant violation of the specific terms of the limited certificate theretofore granted him would be unwarranted."

In *Rowley v. Public Service Commission, et al.*, 112 Utah 116, 185 P. (2d) 514, the court in reviewing the legislative history of that state's regulatory statute said:

"In light of this, it hardly seems that legislative bodies that were insisting on compliance with the laws and mere intent on closer regulation would give a reward to the operator who had disregarded the regulations theretofore existing, and penalize the operator who had obeyed the law. It seems more consistent with legislative intent to prefer the citizen who was legally operating his business, and to discourage the one who violated the law."

In *Tidewater Express Lines, Inc. v. Chesapeake Motor*

*Lines, Inc.,* 11 P.U.R. (3d) 182, 184-185, we find the following:

"To grant this application would, in effect, be permitting Chesapeake to use the evidence of its wrongdoing in its own behalf. Obviously this cannot be done. If this were not so every freight hauler in the state could, and perhaps would, begin infringement upon the rights of others in an effort to build up a case to support an application for the broadening of his authority. The rights and protection of a permit would be a nullity. 'Public convenience and necessity' involves more than simply showing that another's business can be taken away from him by one means or another. And it is more than rendering 'better' service."

The commission has on at least one other occasion given utterance to the above doctrine. In *Re Colorado Hiway Transport, Inc.,* 7 P.U.R. (3d) 318, it said:

"We recognize that applicant has developed considerable business to Camp Carson, but we also realize that he cannot prove the need for a private carrier permit by unauthorized operation only."

In our opinion there is no competent evidence in the record before us to show need for the additional service by applicant. Nor can there be until protestant has had a reasonable time to demonstrate what may be done by him free and unfettered by the unauthorized competition to which he has been subjected at all times pertinent to this action.

The judgment is reversed and the cause remanded with directions to enter judgment directing dismissal of the application of Pikes Peak Automobile Company for certificate of public convenience and necessity.

MR. JUSTICE SUTTON and MR. JUSTICE McWILLIAMS not participating.