612 P.2d 1307

**GREYHOUND LINES, INC., a California Corporation, Plaintiff-Appellant,**

v.

**NEW MEXICO STATE CORPORATION COMMISSION, Defendant-Appellee,**

v.

**AMERICAN BUSLINES, INC., a Delaware Corporation, Intervening Defendant-Appellee.**

**No. 12738.**

Supreme Court of New Mexico.

June 23, 1980.

Keleher & McLeod, Robert H. Clark, Russell Moore, Albuquerque, for plaintiff-appellant.

Jeff Bingaman, Atty. Gen., W. Royer, Asst. Atty. Gen., Santa Fe, for Corporation Commission.

Jones, Gallegos, Snead & Wertheim, Santa Fe, for intervening defendant-appellee.

## OPINION

EASLEY, Justice.

Greyhound sought review in district court of an order of the New Mexico State Corporation Commission (Commission) which granted to American Buslines, Inc. (Trailways) a certificate of public convenience and necessity to operate intrastate bus services between Las Cruces and the New Mexico-Arizona state line. The district court upheld the Commission's order, Greyhound appeals and we affirm.

We consider three issues: (1) whether Trailways proved by substantial evidence that Greyhound's services were not reasonably adequate; (2) whether evidence of Trailways' prior illegal operations over the subject route can be considered in establishing the need for those operations; and (3) whether those illegal operations should bar the granting of the certificate as a matter of law.

Greyhound has operated and continues to operate an *intrastate* passenger and express bus service over the disputed route, between Las Cruces and the New Mexico-Arizona state line on Highway 10. Trailways operates, and only has the authority to operate, an *interstate* bus service over the route, i. e., the passengers and packages it moves over Highway 10 must be going to or coming from a different state than that of origin. It is undisputed that Trailways, through its local agents, violated the limitations of its authority to operate bus services on the subject route by moving passengers and freight *intrastate*. The Commission re-

jected Greyhound's proposed findings that this was done deliberately and intentionally.

In June 1978, Trailways filed an application with the Commission for a certificate of public convenience and necessity to operate intrastate on this route. At a four-day hearing before the Commission, fifty witnesses testified, forty-four of them for Trailways. Both business people who ship express between various points on Highway 10 and passengers who frequently use the bus for transportation on this route testified that they found Trailways more reliable than Greyhound, that the Trailways' terminal in Las Cruces was more convenient than Greyhound's because of its downtown location, and that it was easier to travel Trailways to Albuquerque from various points on Highway 10 because Trailways has direct bus service to Albuquerque and Greyhound does not.

At the hearing, no one said specifically that Greyhound's services were inadequate. Rather, individual complaints against Greyhound and the opinion that competition between the two bus lines would improve services for the public were expressed. Greyhound's six witnesses at the hearing were all Greyhound agents or employees. The substance of their evidence went to the averse economic impact the granting of Trailways' application would have on Greyhound and the efforts Greyhound made and makes to accommodate all passengers.

The Commission granted Trailways its requested certificate of public convenience and necessity. The Commission found, among other things, that: (1) Trailways had presented substantial evidence of a need for its proposed service, including the direct service to Albuquerque from points on Highway 10; (2) the Trailways terminal in Las Cruces was more convenient for many passengers; (3) public interest and public convenience would be served by additional buses along the subject route; and (4) considering existing facilities, neither Greyhound's position nor the public interest would be jeopardized by the granting of Trailways' application. Greyhound's challenge in district court to these findings and the Commission's order were dismissed.

In its appeal, Greyhound claims that the Commission and the trial court failed to make a specific finding that Greyhound's services were inadequate and that Trailways failed to carry its burden of proving that the existing bus services were inadequate. On the contrary, Greyhound claims that substantial evidence demonstrates that the existing bus services of Greyhound were and are adequate. However, the Commission rejected numerous proposed findings of Greyhound that its services were adequate. Greyhound relies on Section 65–2–7, N.M. S.A. 1978, which states, among other things:

It shall be unlawful for any common motor carrier to operate within this state without first having obtained from the commission a certificate of public convenience and necessity. . . . Before granting a certificate to a common motor carrier, the commission *shall take into consideration* the existing transportation facilities in the territory for which a certificate is sought, and in case it *finds* from the evidence that the *service* furnished by existing transportation facilities is *reasonably adequate*, the commission *shall not grant* such certificate. (Emphasis added.)

This statute only requires that the Commission "take into consideration existing facilities." By its own findings, the Commission did this. The Commission "shall" not grant a certificate if it finds the existing facilities to be adequate. Although the Commission did not make a specific finding that Greyhound's services were *inadequate*, since it granted the application, by implication the Commission concluded that the existing facilities were not "reasonably adequate" and that public convenience and necessity required the certificate to be issued.

In *Ferguson-Steere Motor Co. v. State Corporation Com'n*, 63 N.M. 137, 314 P.2d 894 (1957), this Court interpreted the above statute to require an applicant to demonstrate both that there is a public need for the proposed additional service and that the existing facilities are not reasonably adequate. Trailways obviously carried

this burden to the satisfaction of the Commission. As a reviewing court then, we can only examine whether the Commission's action is supported by substantial evidence. *Whitfield Transp., Inc. v. New Mexico St. Corp. Com'n*, 85 N.M. 632, 515 P.2d 557 (1973); *McWood Corporation v. State Corporation Commission*, 78 N.M. 319, 431 P.2d 52 (1967); *Ferguson-Steere Motor Co., supra.* Given the vast amount of evidence Trailways introduced concerning the inconvenience and specific instances of dissatisfaction with Greyhound's services, none of which was refuted by Greyhound at the hearing, we can only conclude that the Commission's grant of the certificate is supported by substantial evidence. It is not within our province to retry the case or substitute our judgment for that of the Commission. *Public Service Co. v. N. M. Pub. Serv. Com'n*, 92 N.M. 721, 594 P.2d 1177 (1979); *Transcontinental Bus System v. State Corp. Commission*, 56 N.M. 158, 241 P.2d 829 (1952).

The second issue raised by Greyhound in this appeal is whether Trailways can rely on its prior illegal operations over the subject route as a basis for establishing a need for its proposed services. It is undisputed that Trailways had been operating illegally and that the witnesses' preference for and reliance on Trailways arose as a result of those illegally provided services.

 Greyhound cites case law standing for the proposition that a motor carrier should not be allowed to benefit from its own such illegal conduct. *See e. g., Dutchland Tours, Inc. v. Commonwealth*, 19 Pa. Cmwlth. 1, 337 A.2d 922 (1975). We agree with Greyhound in this regard. We strongly condemn such activities. As the Colorado Supreme Court pointed out in *Donahue v. Public Utilities Commission*, 145 Colo. 499, 359 P.2d 1024 (1961), a number of factors mitigate against the extension of authority of a motor carrier that has been engaged in illegal operations. First, as pointed out above, one should not be permitted to benefit from his wrongdoing. *Id.* at 507, 359 P.2d at 1028. Second, the legislative intent behind statutes regulating motor carriers cannot be construed to mean that those who abide by such regulations should be penalized and those who violate them rewarded, i. e., by the granting of an extension of their authority because they have established a need for the extension by their illegal operations. *Id.* at 507, 359 P.2d at 1028. Finally, neither an administrative agency nor a reviewing court should encourage, by ignoring such illegal operations, infringement on the rights of others authorized to provide the services. *Id.* at 508, 359 P.2d at 1028.

 But, as the *Donahue* court indicates and as Trailways argues here, a crucial consideration is whether the illegal operations were deliberate and willful. *Id.* at 507, 359 P.2d at 1027–28; *D. F. Blast, Inc. v. Pennsylvania Public Utility Com'n*, 397 Pa. 246, 251, 154 A.2d 505, 508 (1959). Illegal operations are not a per se bar to the granting of a certificate of public convenience and necessity because, as this Court held in *Ferguson-Steere Motor Co., supra* at 145, 314 P.2d at 899, the primary consideration is the public welfare.

 Greyhound presented no evidence to indicate that Trailways' actions were deliberate. Proposed findings by Greyhound that the illegal activities of Trailways were intentional and deliberate and should not be considered were rejected by the Commission and the trial court. The only assumption that can be made is that the Commission did not consider the evidence of Trailways' illegal operations sufficiently substantial to require a denial of the permit or that the Commission found that Trailways' actions were not deliberately and intentionally engaged in for the purpose of establishing the need for the proposed services. It is inherent in its decision that the Commission weighed the evidence of illegal acts against the need for the service and decided that the public welfare would be served by granting the certificate to Trailways. There is substantial evidence to support this decision.

We therefore affirm the district court and the Commission's order.

IT IS SO ORDERED.

SOSA, C. J., and FEDERICI, J., concur.