356 S.E.2d 191

**Norman STEPHENS, dba Mobile Home Movers, Inc.**

v.

**PUBLIC SERVICE COMMISSION OF WEST VIRGINIA and Chester L. Worrell, DBA Good Ol' Boys Mobile Home Service.**

**No. 16917.**

Supreme Court of Appeals of West Virginia.

April 9, 1987.

Hanna & Elliott, Homer F. Hanna, Jr., Samuel F. Hanna, Charleston, for appellant.

William R. Wooten, Wooten, Wooten, & Fragile, Beckley, for Worrell.

James G. Anderson, Anderson & Sines, Beckley, for Doy Mobile Homes.

Franklin G. Crabtree, Director, Motor Carrier Div., Charleston, for PSC.

McHUGH, Justice:

This case is before this Court upon the appeal of Norman Stephens, doing business as Mobile Home Movers, Inc. (hereinafter the protestant) from a final order of the Public Service Commission of West Virginia (hereinafter the PSC). This order affirmed the ruling of the PSC hearing examiner to grant Chester L. Worrell, doing business as Good Ol' Boys Mobile Home Service (hereinafter the applicant), a certificate of convenience and necessity to operate as a common carrier by motor vehicle engaged in the transportation of mobile homes.

I

The applicant sought a certificate of convenience and necessity to operate as a common carrier by motor vehicle to engage in the transportation of mobile homes to and from points in Raleigh County, pursuant to *W. Va. Code*, 24A–2–5 [1980]. Two existing licensed operators in the county, Norman Stephens and Doy Mobile Homes, protested.

The applicant and the protestants, including the appellant herein, presented evidence concerning the applicant's fitness, the adequacy of present service and the need for the proposed authority. Testimony was elicited from several of the applicant's witnesses who had retained his services, although he was not authorized to perform them, and who were satisfied with his performance. Witnesses for the protestants testified that their services were satisfactory and sufficient, there being no need for another mobile home transportation service within the county.

The applicant and one of his employees, Douglas Reed, also testified. However, on cross-examination, both the applicant and Reed refused to answer questions regarding their alleged unauthorized mobile home operations by invoking their Fifth Amendment rights against self-incrimination. Stephens and Doy protested and left the hearing just prior to its closing, when the hearing examiner refused to compel the witnesses to testify on cross-examination.

The hearing examiner determined that the applicant had established the requisite convenience and necessity to the public and that the services rendered by the existing companies were not reasonable, sufficient or adequate. The hearing examiner further found that the applicant's illegal operations did not bar the granting of a certificate. Exceptions to this decision were re-

ceived from the two protestants, and the decision was modified in part and affirmed in part by the PSC order which is the subject of this appeal.

## II

Recently, in *Browning-Ferris Industries of South Atlantic, Inc. v. Public Service Commission*, 175 W.Va. 52, 55, 330 S.E.2d 862, 865 (1985), we questioned the propriety of granting operational authority to a company which had so clearly demonstrated itself to be disrespectful of the rules and regulations of this State. The case now before us presents a similar issue: whether a common carrier by motor vehicle who willfully operates unlawfully within this State by not first having applied for and obtained a certificate of convenience and necessity pursuant to W.Va.Code, 24A–2–5 [1980], may use evidence of those unlawful operations to support its application for a certificate of convenience and necessity.

The protestant in this case contends that the applicant failed to demonstrate his fitness to be granted a certificate pursuant to *W.Va.Code*, 24A–2–5 [1980], by reason of the applicant's hauling of numerous mobile homes prior to being granted a certificate.

With respect to the appropriate standard of review in these types of proceedings, this Court has held that " '[i]n a proceeding for a certificate to operate as a common carrier an order of the Public Service Commission will not be disturbed on appeal unless its findings are contrary to the evidence, are without evidence to support them, are arbitrary, or result from a misapplication of legal principles.' Syl. pt. 1, *Weirton Ice & Coal Supply Co. v. Public Service Commission*, 161 W.Va. 141, 240 S.E.2d 686 (1977)." Syllabus, *Browning-*

*Ferris Industries of South Atlantic, Inc. v. Public Service Commission*, 175 W.Va. 52, 330 S.E.2d 862 (1985).

Before commencing operations, all common carriers in this State are required to obtain a certificate of convenience and necessity from the PSC pursuant to *W.Va. Code*, 24A–2–5 [1980].[1]

*W.Va.Code*, 24A–2–1 [1937] succinctly states that "[a]ll common carriers by motor vehicle are hereby declared to be affected with a public interest and *subject to the laws of this state* now in force or that hereafter may be enacted *pertaining to public utilities and common carriers* as far as applicable, and not in conflict herewith." (emphasis added)

■ Generally, illegal operations are not a *per se* bar to the granting of a certificate of public convenience and necessity. *Florida-Texas Freight, Inc. v. United States*, 373 F.Supp. 479, 483 (S.D.Fla.1973), *aff'd*, 416 U.S. 976, 94 S.Ct. 2377, 40 L.Ed.2d 755 (1974); *Graves Trucking, Inc. v. Public Service Commission*, 498 N.E.2d 1261, 1264 (Ind.Ct.App.1986); *Greyhound Lines, Inc. v. New Mexico State Corporation Commission*, 94 N.M. 496, 499, 612 P.2d 1307, 1310 (1980); *Brinks, Inc. v. Pennsylvania Public Utility Commission*, 500 Pa. 387, 390, 456 A.2d 1342, 1344 (1983).

However, it is well established that a common carrier engaged willfully in illegal operations may be found "unfit" for purposes of obtaining a certificate of public convenience and necessity. *Leavitts Freight Service, Inc. v. United States*, 411 F.Supp. 452, 453 (D.Or.1975); *Consolidated Carriers Corp. v. United States*, 321 F.Supp. 1098, 1100 (S.D.N.Y.1970), *aff'd*, 402 U.S. 901, 91 S.Ct. 1375, 28 L.Ed.2d 642 (1971). *Accord, Donohue v. Public Utilities Commission*, 145 Colo. 499, 508, 359

---

1. This statutory provision also contains the standards and guidelines to which the PSC is to adhere in performing this function:

It shall be unlawful for any common carrier by motor vehicle to operate within this state without first having obtained from the commission a certificate of convenience and necessity.... [I]f the commission finds from the evidence that the public convenience and necessity require the proposed service or any

part thereof, it shall issue the certificate.... Before granting a certificate to a common carrier by motor vehicle the commission shall take into consideration existing transportation facilities in the territory for which a certificate is sought, and in case it finds from the evidence that the service furnished by existing transportation facilities is reasonably efficient and adequate, the commission shall not grant such certificate.

P.2d 1024, 1028 (1961); *Day Transfer, Inc. v. E.H. Hamilton Trucking & Warehouse Service, Inc.*, 408 N.E.2d 632, 634 (Ind.Ct. App.1980); *Dilts Trucking, Inc. v. Peake, Inc.*, 197 Neb. 459, 468, 249 N.W.2d 732, 737 (1977); *Greyhound Lines, Inc. v. New Mexico State Corporation Commission, supra; Matador Service, Inc. v. Missouri Basin Well Service, Inc.*, 367 N.W.2d 749, 756 (N.D.1985); *Frank Cartage Division v. Public Utilities Commission*, 48 Ohio St.2d 180, 181, 358 N.E.2d 523, 525 (1976).

▮ As the Supreme Court of Colorado noted in *Donohue v. Public Utilities Commission, supra,* a number of factors mitigate against the extension of authority to a motor carrier that has engaged in illegal operations. First, one should not be permitted to benefit from his wrongdoing. 145 Colo. at 507, 359 P.2d at 1028. Second, the legislative intent behind statutes regulating common carriers may not be construed to mean that those who abide by such regulations should be penalized and those who violate them rewarded, *i.e.*, by the granting of a certificate because they have established a need by their illegal operations. 145 Colo. at 507, 359 P.2d at 1028. Finally, neither an administrative agency nor a reviewing court should encourage, by ignoring such operations, the infringement on the rights of others authorized to provide the services. 145 Colo. at 508, 359 P.2d at 1028. *Accord, Greyhound Lines, Inc. v. New Mexico State Corporation Commission*, 94 N.M. 496, 499, 612 P.2d 1307, 1310 (1980).

▮ Accordingly, if a common carrier by motor vehicle willfully operates unlawfully within this State by not first having applied

for and obtained a certificate of convenience and necessity pursuant to *W. Va. Code*, 24A–2–5 [1980], and that common carrier subsequently applies for a certificate, the Public Service Commission may not base its finding that the public convenience and necessity require the proposed service or any part thereof on evidence relating to such unlawful operations. "To grant a certificate to one who has flagrantly violated the law is to put a premium on the violation of the law which we are under oath to administer and enforce." *Public Utilities Commission v. Verl Harvey, Inc.*, 150 Colo. 158, 169, 371 P.2d 452, 458 (1962).

We need not remand this case for a finding on whether the applicant willfully operated unlawfully prior to filing for a certificate of convenience and necessity because the hearing examiner below implicitly acknowledged that the applicant had willfully conducted illegal operations. *Chester L. Worrell, dba Good Ol' Boys Mobile Home Service,* M.C. Case No. 22399–C at p. 11 (Feb. 8, 1985) (hearing examiner's decision). The hearing examiner noted in her findings of fact that the applicant had been cited for making an improper move and had paid the corresponding fine.[2]

▮ It is clear that the willful and persistent illegal operations by the applicant formed the basis of granting the certificate of convenience and necessity in this case.[3] Before applying for and obtaining a certificate of convenience and necessity, the applicant transported mobile homes for twelve witnesses who testified at the public hearing. The applicant's flagrant violation of the law precludes the granting of the

---

**2.** This finding of fact was later incorporated into the PSC's order, which modified the hearing examiner's decision in part, but affirmed its result. *See Chester L. Worrell, dba Good Ol' Boys Mobile Home Service,* M.C. Case No. 22399–C at p. 11 (June 25, 1985) (PSC order).

**3.** This was acknowledged by the hearing examiner during the public hearing below where the following exchange transpired:

"MR. ANDERSON: ... [T]his witness [applicant's employee], as well as the Applicant ..., [has] been involved in ... illegal activity continually, knowingly, and willingly.

EXAMINER RODAK: I think that's obvious from the record."
Transcript of public hearing at 277.

In a newspaper article referred to in the record, the applicant describes himself as a "bootlegger." "A bootlegger, says Worrell ..., is a man with a truck who will move your mobile home even though he isn't licensed to do so. These men don't have the papers that make them legal." Beckley Register/Herald, Nov. 18, 1984 at 2D, col. 1. Furthermore, during the public hearing, a witness for the applicant, Arnold Collins, testified on direct examination that the applicant admitted to "bootlegging."

certificate in this case. That unlawful transportation indicates not only a lack of good faith, but also an unwillingness to obey the laws of this State. *Browning-Ferris Industries of South Atlantic, Inc. v. Public Service Commission,* 175 W.Va. 52, 55, 330 S.E.2d 862, 865 (1985).

For the foregoing reasons, we hold that the certificate was improperly granted and reverse the decision of the Public Service Commission.

Reversed.