PUROLATOR COURIER CORPORATION
*v.* ARKANSAS AIR COURIER

86-5                                                   712 S.W.2d 892

Supreme Court of Arkansas
Opinion delivered July 14, 1986

456

*Friday, Eldredge & Clark*, by: *Michael G. Thompson*, for appellant.

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *Floyd M. Thomas, Jr.*, for appellee.

GEORGE ROSE SMITH, Justice. The appellee, Arkansas Air Courier, applied to the Arkansas Transportation Commission for authority to transport by motor vehicle, between points in the State of Arkansas, various papers exchanged among banks, such as cash letters, data processing work, commercial paper, documents, and business records. The application was opposed only by the appellant, Purolator Courier Corporation. After a hearing the Commission granted the application. This appeal from the circuit court's affirmance of the Commission's order comes to this court under Rule 29(1)(d).

Our review in a case of this kind is de novo, much like that in a chancery appeal. Ark. Stat. Ann. § 73-1760(f) (Repl. 1979), which incorporates § 73-134. The latter section provides

that the Supreme Court shall review all the evidence and make such findings as are proper and equitable. Nevertheless, we must keep in mind that the Commission saw and heard the witnesses, whereas we review the record only. Consequently we uphold the Commission's order unless it is against the weight of the evidence. *Wisinger* v. *Stewart*, 215 Ark. 827, 223 S.W.2d 604 (1949). In the present case we find the Commission's order to be supported by the preponderance of the evidence.

The applicant, AAC, has been transporting bank paper since it obtained a federal interstate permit in 1976. At that time all its operations were by air, but the 1981 air controllers' strike reduced the availability of weather information to such an extent that AAC had to convert its business from air transportation to motor vehicle transportation. At first it conducted an intrastate business in Arkansas without a permit, because it was not sure that it needed a permit and was erroneously told by an employee of the Commission that no permit was required. In 1984 the present application for statewide authority was filed. AAC is a comparatively small individual proprietorship employing ten drivers and one aviation pilot. When the application was filed, AAC was serving about 80 banks in the state.

The protestant, Purolator, is a comparatively large company with interstate authority to serve virtually every point in the United States. It carries not only banking paper but also general commodities, by air as well as on the surface.

AAC's application was supported by the Arkansas branch of the Federal Reserve Bank and by the three large Little Rock banks, all of which serve as clearing houses for smaller banks throughout the state. Their witnesses discussed in great detail the importance that banks attach to the rapid transfer of commercial paper to and from the clearing houses, so that the banks can debit and credit the checks quickly and the customers have the use of their money as soon as possible. The time required for transfers is referred to as the float or turn-around. Two witnesses testified that AAC had reduced the turn-around from two days to one. The Commission commented in its opinion on the testimony of a DeWitt banker who said that Purolator's inability to deliver the bank's paper until 9:25 to 10:00 a.m. had resulted in five or six employees sitting idle from 8:30 until the paper was delivered.

When the bank changed to AAC, the paper was delivered by 8:15 and the employees were able to get to work at once. There was testimony that AAC adjusts its schedules to meet the banks' needs. Purolator, by contrast, has commodities to be delivered in addition to bank paper, so that, as Purolator's manager conceded, "we have limits to our flexibility."

The specific arguments presented by Purolator do not call for extended discussion. It is said that AAC produced an insufficient number of witnesses to establish a need for AAC to be granted state-wide authority. According to the testimony as we understand it, the majority of interbank transactions in Arkansas are cleared through the three large Little Rock banks and the Federal Reserve. Representatives of all four testified in favor of the application. In addition, bankers from DeWitt, El Dorado, Salem, and Springdale testified favorably from the point of view of the smaller banks. In all, AAC presented eight public witnesses in support of its position. No public witness came forward to testify for Purolator. Since there was no testimony to indicate that something less than state-wide authority would be preferable, we hardly see that the Commission was presented with any middle ground between granting and denying the requested authority. The Commission specifically found: "There is obviously a tremendous demand for the specialized type of work and service applicant provides." Moreover, the existence of a genuine need for AAC's service is indicated by AAC's having built up a clientele of some 80 banks. Several witnesses said they paid more for AAC's service than they had for Purolator's, but it was worth the difference.

Purolator concludes by arguing that AAC is not morally fit to receive the requested authority, because it operated illegally, without a permit, for several years and because it received three citations for violations of Arkansas law. The Commission summarily dismissed the illegality of AAC's prior conduct by admitting for the record that a Commission employee had misled AAC. There is very little proof about the nature of the citations, but at the very most they were merely allegations, not proof. The charges had not yet been heard when the Commission decided the case. Upon the record we cannot hold that AAC is not morally fit to exercise the authority it seeks.

Affirmed.

Holt, C.J., not participating.