ARKANSAS TRANSIT HOMES, INC., Crews Mobile
Home Service, and Transit Homes of America, Inc. *v.*
Dwayne STONE, d/b/a Stone Mobile Home Service

89-291                                            783 S.W.2d 860

Supreme Court of Arkansas
Opinion delivered February 12, 1990
[Rehearing denied March 12, 1990.*]

---

*Turner, J., would grant rehearing. Price, J., not participating.

324

*Kemp, Duckett, Hopkins & Spradley*, for appellants.

*Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.*, by: *Scott E. Daniel*, for appellee.

TOM GLAZE, Justice. This is an appeal from the trial court's affirmance of the Arkansas Transportation Safety Agency, Transportation Regulatory Board's (Board) granting Dwayne Stone a certificate of public convenience and necessity to operate as a motor common carrier in intrastate commerce. The appellee's certificate is limited to secondary moves of mobile homes, which are any moves other than moving a new mobile home from a dealership, over irregular routes between points in Cleburne, Conway, Faulkner, Perry, Van Buren, and White Counties. Appellants, three companies who transport mobile homes in the areas where the appellee sought authority, protested the awarding of the certificate to the appellee below and here on appeal.[1] On appeal, they contend that the Board's order is contrary to the preponderance of the evidence. We reverse.

At the hearing before the Board, the appellee and five witnesses testified in support of his application. The appellee stated that he had been working with mobile homes since 1967, and if he was granted the certificate he would be the sole driver. In his testimony, he stated that he had previously filed an application for a certificate of public convenience and necessity on August 12, 1976, but it had been denied. He also testified that he had an ad in

---

[1] We note that Crews Mobile Home Service only protested the appellee's application for authority for movements that originate or terminate in Faulkner County as being in conflict with its present authority.

the phone book stating that he would provide escorts in and around Conway in a fifty mile radius, but that he had placed the ad before the hearing and just had not removed it. While the appellee stated that he tried to keep his business within the commercial zone, he candidly admitted that he had recently made moves outside the commercial zone of Conway without proper authorization. He also admitted that he was aware he needed the Board's certification to permit him to engage in the intrastate movement of mobile homes, outside the commercial zone of the city.

Three of the appellee's witnesses, as noted by the Board, testified as to their experiences with moves of mobile homes within the commercial zone of the city. These moves are not regulated by the Board, and thus no authorization is required. The other two witnesses, who are partners in Keathley Enterprises, a mobile home dealership engaged in buying and selling used and repossessed mobile homes, testified about bad experiences with using the other moving companies and about good experiences with using the appellee in moving mobile homes. In recounting those moves, the witnesses stated that the appellee had recently made unauthorized moves for them outside the commercial zone of Conway. In countering this evidence, the appellants mainly testified as to the amount of business they would lose, and requested that they be given an opportunity to provide any needed service before the appellee is authorized to provide new service.

After hearing the above testimony, the Board made the following pertinent findings: 1) Stone's financial statement revealed that he had sufficient assets to serve the public as a common carrier; 2) Stone had many years experience in transporting mobile homes and is capable of performing the service; 3) the granting of additional authority to transport mobile homes would benefit the general public since there are not sufficient movers locally to handle short hauls wherein it would be unprofitable to deadhead equipment from another state or a distant county; 4) the granting of the authority would not represent a substantial diversion of traffic from any protestant, but would provide a "local" person to be available in a six-county area; and 5) Stone has conducted his business and himself in such a manner as to gain the confidence and respect of the witnesses.

Before a certificate for public convenience and neces-

sity can be approved by the Board, the applicant has the burden of proving the following: 1) he or she is fit, willing, and able properly to perform the service proposed and to conform to the provisions of the Motor Carrier Act and the requirements, rules, and regulations of the Arkansas Transportation Commission; and 2) the proposed service is or will be required by the present or future public convenience and necessity. Ark. Code Ann. § 23-13-220(a)(1) (1987). Unless the applicant can prove both of these requirements, the Board must deny the application. *Id.* When an existing service is in operation for the route applied for, the applicant must prove one of the following to show public convenience and necessity: 1) the existing service is inadequate; 2) additional service would benefit the public; or 3) the existing carrier was given an opportunity to furnish additional service. *See Jones Rigging & Heavy Hauling, Inc.* v. *Howard Trucking, Inc.,* 298 Ark. 33, 764 S.W.2d 450 (1989); *Santee* v. *Brady*, 209 Ark. 224, 189 S.W.2d 907 (1945).

██ While we review appeals from the Transportation Regulatory Board *de novo*, we will not disturb its findings unless they are against the preponderance of the evidence. *Jones Rigging & Heavy Hauling, Inc.,* 298 Ark. 33, 764 S.W.2d 450. The burden is on the appellants to show that the Board's decision is wrong. *Id.* We do not retry the cases or substitute our judgment for that of the Board, and we accord due deference to the Board because of its expertise in passing on the fact questions involved and because of its advantage of seeing and hearing the testimony of the witnesses. *Id.* If we find that the evidence is evenly balanced, the Board's view must prevail on appeal. *Jones Truck Lines* v. *Camden-El Dorado Express*, 282 Ark. 50, 665 S.W.2d 867 (1984).

After stating these tenets, we first consider the statutory requirement bearing on fitness and whether the appellee met his burden in meeting that standard. The appellants argue that because the appellee knowingly conducted unauthorized moves of mobile homes prior to the hearing, the Board erred in finding the appellee fit.[2] We must agree and find that this determination

---

[2] Also, we note that the appellants argue that the appellee is unfit because he leveled and blocked mobile homes without obtaining the necessary license from the Arkansas Manufactured Housing Commission. But, because of the appellee's illegal moves, we find

is dispositive of the case.

This court has never directly addressed the effect of prior illegal moves on the applicant's showing of fitness. In *Purolator Courier Corp.* v. *Arkansas Air Courier*, 289 Ark. 455, 712 S.W.2d 892 (1986), this same argument was made, but we dismissed it because we could not find sufficient proof of the violations in the record. In the present case, the Board concluded from the appellee's testimony that he misunderstood the "confusing" rules pertaining to commercial zones. We find nothing in the record to support such a finding. Instead, the appellee openly admitted in his testimony to knowingly performing moves outside the commercial zone without a certificate. In addition, the owners of Keathley Enterprises testified that the appellee recently made moves for them outside the commercial zone of Conway.

The Board stated that if it refused authority to every applicant who had provided transportation service without holding operating authority to do so, few applicants would receive authority. The Board's summary dismissal of appellee's blatant disregard for the law and the Board's regulation runs counter to all precedent we have discovered bearing on appellee's fitness and how it must be viewed in these matters.

In cases from the Interstate Commerce Commission, the applicant appearing before the federal regulatory board must also make an affirmative showing that he is fit, willing, and able to provide the transportation to be authorized by the certificate and to comply with the regulations of the Commission. 49 U.S.C.A. § 10922(b)(1)(A) (Supp. 1989). In considering an applicant's fitness, the Federal Commission has stated that past failures to comply with regulatory requirements are pertinent insofar as they relate directly to his willingness and ability to conduct the proposed operation in a manner consistent with applicable laws and regulations. *See Terminal Taxi Co.* v. *Common Carrier Application*, 112 M.C.C. 796 (1971); *Barrett Extension—Ironwood, Mich.*, 81 M.C.C. 731 (1959). The Commission has stated that prior violations do not in and of themselves require a finding of unfitness, but if the acts or omissions were willingly and

it unnecessary to address whether this failure to obtain a license should make the appellee unfit.

knowingly engaged in with the intent of evading or defeating the purpose of the regulation, then such a finding must be made. *See Terminal Taxi Co.*, 112 M.C.C. 796 (1971); *see also Haywood Trucking Co. Contract Carrier Application*, 81 M.C.C. 437 (1959).

Likewise, other jurisdictions have stated that while illegal operations are not a *per se* bar to the granting of a certificate of public convenience and necessity, a common carrier engaged willfully in illegal operations may be found unfit for purposes of obtaining a certificate of public convenience and necessity. *See Wells Fargo Armored Serv. Corp.* v. *Bankers Dispatch Corp.*, 188 Neb. 584, 198 N.W.2d 195 (1972); *Matador Serv., Inc.* v. *Missouri Basin Well Service*, 367 N.W.2d 749 (N.D. 1985); *Stephens* v. *Public Service Comm'n*, 356 S.E.2d 191 (W. Va. 1987); *see also Lynden Transfer, Inc.* v. *United States*, 262 F. Supp. 336 (1967). In *Stephens*, the West Virginia Supreme Court of Appeals noted the following factors that mitigate against the extension of authority to a motor carrier that has engaged in illegal operations: 1) one should not be permitted to benefit from his wrongdoing; 2) the legislative intent behind statutes regulating common carriers may not be construed to mean that those who abide by such regulations should be penalized and those who violate rewarded, i.e., by granting of a certificate because they have established a need by their illegal operations; and 3) neither an administrative agency nor a reviewing court should encourage, by ignoring such operations, the infringement on the rights of others authorized to provide the services. 356 S.E.2d at 194 (quoting *Donohue* v. *Public Utilities Comm'n*, 145 Colo. 499, 508, 359 P.2d 1024, 1028 (1961)).

We consider the authorities cited above to be persuasive. The appellee first applied for a certificate from the Board, and when this application was denied he knowingly performed moves outside the commercial zone without proper authorization. Neither this court, nor the Board, should reward the appellee's flagrant violation of the Board's regulations with the granting of a certificate for public convenience and necessity. Therefore we hold that the Board's finding that the appellee was fit is contrary to controlling law and against the preponderance of the evidence. Hence we reverse. Since we hold that the appellee failed to meet his first burden of proof in accordance with Ark. Code Ann. § 23-13-220(a)(1), we need not address whether the appellee showed

that his service is required by public convenience or necessity. Suffice it to say, most of the evidence appellee presented in support of the public necessity issue directly resulted from his illegal operations in the six-county area for which he now seeks authority to work.

For the reasons stated above, we reverse.

HICKMAN and TURNER, JJ., dissent.

OTIS H. TURNER, Justice, dissenting. The majority substitutes its judgment in this case for that of the Arkansas Transportation Safety Agency, Transportation Regulatory Board, in basing its decision on the appellee's unauthorized moving of homes at a time when Stone Mobile Home Service had no valid certificate, a violation of Ark. Code Ann. § 23-13-218 (1987).

These violations were considered by the Board, along with all the other evidence for and against the application. After weighing the evidence, as required, in its judgment and under the provisions of Ark. Code Ann. § 23-13-219 (1987), the Board granted the application for a certificate. On appeal, the action of the Board was affirmed by the circuit court.

The majority alludes to the fact that this court has never addressed the effect of prior unauthorized actions that are prohibited by statute, such as those of the appellee, when making a finding of fitness. Therefore, substantial reliance is based by the majority upon the federal code and cases arising from action of the Interstate Commerce Commission. That authority is neither applicable here nor persuasive. The Interstate Commerce Commission has stated that past failures to comply with regulatory requirements are pertinent in their direct relation to a company's willingness and ability to conduct a proposed operation in a manner consistent with applicable laws and regulations. Moreover, if the past acts or omissions are shown to have been willingly or knowingly engaged in with the intent of evading the purpose or intent of the regulations, a finding of unfitness *must* be made. *See Terminal Taxi Co., Common Carrier Application*, 112 M.C.C. 796 (1971); *see also Haywood Trucking Co., Contract Carrier Application*, 81 M.C.C. 437 (1959). Arkansas has imposed no such requirement on the Board in its decision-making process.

We have recently restated in *Jones Rigging & Heavy Hauling, Inc.* v. *Howard Trucking, Inc.*, 298 Ark. 33, 764 S.W.2d 450 (1989), certain principles which we will follow in appeals from the Board. While we review these cases *de novo*, we will not disturb the findings of the Board unless they are against the preponderance of the evidence. *Batesville Truck Lines* v. *Ark. Freightways, Inc.*, 286 Ark. 116, 689 S.W.2d 553 (1985). We do not retry these cases or substitute our judgment for that of the Board. *Fisher* v. *Branscum*, 243 Ark. 516, 420 S.W.2d 882 (1967). We will accord due deference to the Board because of its expertise in passing on the fact questions involved and because of its advantage in seeing and hearing the testimony of the witnesses before it. The burden is on the appellants to prove the decision is wrong. When the evidence is evenly balanced, the Board's view must prevail. *Wheeling Pipe Line, Inc.* v. *Arkansas Commerce Commission*, 249 Ark. 685, 460 S.W.2d 784 (1970).

As we have so often said, our role is not to substitute our judgment for the judgment of the Board, but to review its decision. In my view, the decision of the Board is not against the preponderance of the evidence, and I would affirm.

HICKMAN, J., joins in this dissent.