The **DEPARTMENT OF INSTITUTIONS, DIVISION FOR DEVELOPMENTAL DISABILITIES, WHEAT RIDGE REGIONAL CENTER, Petitioner,**

v.

**Isaac N. KINCHEN and The State Personnel Board, Respondents.**

**No. 93SC414.**

Supreme Court of Colorado, En Banc.

Dec. 19, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., Stacy L. Worthington,

Asst. Atty. Gen., Human Resources Section, Denver, for petitioner.

Vonda G. Hall, Denver, for respondent Isaac N. Kinchen.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Dianne E. Eret, Asst. Atty. Gen., General Legal Services Section, Denver, for respondent State Personnel Bd.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review a judgment of the Colorado Court of Appeals that affirmed a decision of The Colorado State Personnel Board (Personnel Board) directing that Isaac N. Kinchen be reinstated as an employee of The Department of Institutions, Division for Developmental Disabilities, Wheat Ridge Regional Center (Department), with back pay and benefits. *See Kinchen v. Department of Institutions,* 867 P.2d 8 (Colo. App.1993). The Personnel Board's decision adopted the findings of fact and upheld the conclusions of law made by an administrative law judge (ALJ) in an evidentiary hearing resulting from Kinchen's appeal to the Personnel Board from the disciplinary action of the Department terminating his employment. The issue before us is whether the ALJ was correct in ruling that in the evidentiary hearing the Department had the burden of proof as to the factual basis for the disciplinary action. We conclude that the Department was properly required to bear that burden and therefore affirm the judgment of the court of appeals.

I.

Wheat Ridge Regional Center (Ridge)[1] is a residential facility for the care and treatment of persons with developmental disabilities. It is operated by The Department of Institutions, Division for Developmental Disabilities. Crosby Center is one of the residential living units at Ridge and consists of two houses, each of which can accommodate eight residents. Isaac N. Kinchen was employed by the Department and worked as a public service career trainee III at Crosby Center during the latter part of 1990 and until the termination of his employment early in 1991.

In late 1990 the supervisors at Ridge became concerned about the client care at Crosby Center because of the number of injuries being reported there, some with no reported cause. After efforts to identify the causes of the problems through internal investigation proved unsuccessful, Rosella Gonzales, the director at Ridge, decided to hire an undercover investigator and contracted with Harold W. Taylor to perform that service. Taylor was employed effective December 17, 1990, as a residential technician trainee and was to observe and document events at Crosby Center while working there in that capacity. After completing a two week training course on working with developmentally disabled persons, Taylor began his work at Crosby Center. During January 1991, Taylor reported frequently to the director of Ridge that he had observed incidents of alleged abuse of residents of the Crosby Center by the staff. Taylor identified Kinchen as the person who had committed several of the acts of abuse. The director asked Taylor to formalize his observations and submit them anonymously. Taylor did so in a memorandum to the director from "a concerned employee" on February 8, 1991. The memorandum identified allegedly abusive behavior by Kinchen on six days in January.[2]

---

1. We refer to Wheat Ridge Regional Center as "Ridge" in describing the relevant physical facilities, staff, and operations of that facility, while using the term "Department" to refer to The Department of Institutions, which operates Ridge through the Department's Division for Developmental Disabilities.

2. As found by the ALJ:

The memo identified 6 days between January 4 and January 27, 1991 when Taylor allegedly observed abusive behavior toward residents by complainant [Kinchen]. Specifically, Taylor reported that on January 4 complainant kicked Jamie in the thigh after Jamie pulled a fire alarm, and "flipped the bird" to Kim; on January 6 complainant drug Kim across the floor; on January 10 complainant kneed Danny in his thigh; on January 13 and 14 complainant slapped James in the face and on January 27, complainant attempted to control George by grabbing his hair.

The director gave Taylor's memorandum to Carl Schutter, the person in charge of support services at Ridge, to whom the director, as the appointing authority,[3] had delegated the responsibility for administering disciplinary actions. By letter dated February 8, 1991, Schutter notified Kinchen that he was suspended with pay, effective February 9, pending completion of an investigation concerning allegations of client abuse. Neither the source nor the substance of the allegations was made known to Kinchen in that letter.

Schutter then scheduled a meeting with Kinchen for February 28, 1991, as required by regulation.[4] At the meeting, the issues set out in the anonymous memorandum were discussed. Kinchen denied all allegations of abuse. At the time of the meeting, Schutter did not know the identity of the informant and denied Kinchen's request that the informant be identified.

After the meeting, Schutter asked Gonzales for the name of the informant. She supplied Taylor's name but did not tell Schutter that Taylor had been hired as an informant. Schutter then spoke with Taylor and decided that the allegations that Kinchen had committed acts of client abuse were true. Schutter notified Kinchen by letter dated March 13, 1991, that he was dismissed from his employment as a public service career trainee III effective that same date for willful misconduct consisting of the seven acts of abuse of Crosby Center residents described in the earlier anonymous memorandum.

Kinchen appealed his dismissal to the Personnel Board. An ALJ held an evidentiary hearing at which she ruled that the Department had the burden of proving by a preponderance of the evidence that Kinchen committed the alleged acts of abuse of residents at Ridge. After the hearing, the ALJ made written findings of fact and conclusions of law. The ALJ reviewed the record and concluded that Taylor's testimony was inconsistent with other evidence and "cannot be credited." Accordingly, the ALJ ruled that the Department "did not prove, by a preponderance of the evidence, that [Kinchen] did the acts for which discipline was imposed." The ALJ ordered Kinchen "reinstated to his former position with back pay and benefits." The Personnel Board adopted the findings of fact and upheld the conclusions of law contained in the decision of the ALJ and therefore affirmed that decision.

The Department appealed to the Colorado Court of Appeals, contending that the ALJ erred in placing the burden of proof on the Department. The court of appeals affirmed the order of the Personnel Board, reasoning that "Kinchen had a protected property interest in his position" and that "in an action to deprive him of that position the [ALJ] appropriately placed the burden of proof on the Department, the party seeking that deprivation." *Kinchen v. Department of Institutions*, 867 P.2d 8, 11 (Colo.App.1993).[5]

**3.** The Colorado Constitution defines the term "appointing authority" as follows: "The head of each principal department shall be the appointing authority for the employees of his office and for heads of divisions, within the personnel system, ranking next below the head of such department. Heads of such divisions shall be the appointing authority for all positions in the personnel system within their respective divisions...." Colo. Const. art. XII, § 13(7). Rule 8–3–1, 4 CCR 801–1 (1985), vests responsibility for administering corrective and disciplinary actions in appointing authorities. This rule also authorizes an appointing authority to delegate the responsibility for administering corrective and disciplinary action. However, the appointing authority remains responsible for the actions of the designee.

Rosella Gonzalez, as the director at Ridge, was the appointing authority for Ridge. She delegated her corrective and disciplinary action responsibility as appointing authority to Carl Schutter, the person in charge of support services at Ridge.

**4.** The Code of Colorado Regulations requires an appointing authority to meet with the employee against whom discipline is contemplated prior to making a final decision regarding disciplinary action. Rule 8–3–3(D), 4 C.C.R. 801–1 (1992). *See* n. 3, *supra*, concerning delegation of authority by Gonzalez to Schutter.

**5.** The court of appeals also rejected the Department's arguments that the Personnel Board's conclusions were contrary to the weight of the evidence and that the Personnel Board erred in reversing the termination of Kinchen's employment without an explicit finding that the Department's action was "arbitrary, capricious, or contrary to rule or law," as required by section 24–50–103(6), 10B C.R.S. (1988). The first issue is not before us on certiorari review. The second is

We granted certiorari to address the following two issues:

1. Whether the court of appeals erred in holding that the Department of Institutions was the proponent of an order in a hearing before the State Personnel Board held upon the appeal by a Department employee of his disciplinary termination.

2. Whether the court of appeals erred in holding that the Department of Institutions was required to bear the burden of proof in a hearing before the State Personnel Board held upon the appeal by a Department employee of the disciplinary termination.

## II.

Reduced to the essence, the issue to be resolved by us is a narrow one: In the evidentiary hearing to be held by the Colorado State Personnel Board when a certified state employee appeals from an order terminating his or her employment for willful misconduct, must the burden of proof as to whether the misconduct occurred be borne by the employer or the employee? A review of the constitutional, statutory, and regulatory provisions relevant to this issue, as well as principles established by judicial decisions, will provide the necessary framework for our analysis.

The state personnel system is established by Article XII, sections 13, 14, and 15, of the Colorado Constitution and is legislatively refined by sections 24–50–101 to –142, 10B C.R.S. (1988 and 1994 Supp.). *Colo. Ass'n of Pub. Emp. v. D.O.H.*, 809 P.2d 988, 991 (Colo.1991). It embraces all appointive public officers and employees of the state, with certain specified exceptions. Colo. Const.,

art. XII, § 13(2). The constitution establishes a state personnel board and grants it authority to adopt rules to implement the constitutional provisions and the laws enacted pursuant to those provisions. Colo. Const. art. XII, § 14.

■ A central feature of the state personnel system is the principle that persons within the system can be subjected to discharge or other discipline only for just cause. *D.O.H.*, 809 P.2d at 991; *see Coopersmith v. City and County of Denver*, 156 Colo. 469, 479, 399 P.2d 943, 948 (1965). In pertinent part, the constitution states:

> A person certified to any class or position[6] in the personnel system may be dismissed, suspended, or otherwise disciplined by the appointing authority upon written findings of failure to comply with standards of efficient service or competence, or for willful misconduct, willful failure or inability to perform his duties, . . . . Any action of the appointing authority taken under this subsection shall be subject to appeal to the state personnel board, with the right to be heard thereby in person or by counsel, or both.

Colo. Const. art. XII, § 13(8).

The legislature has enacted a statute reiterating the constitutional standards for discipline, § 24–50–125(1), 10B C.R.S. (1988), prescribing notification of discipline by the appointing authority to the employee, § 24–50–125(2), providing for a hearing by the Personnel Board upon the disciplinary action if requested by the disciplined employee, § 24–50–125(3), and providing for affirmance, modification, or reversal of the action of the appointing authority by the Personnel Board, § 24–50–125(4).[7]

implicated in the issues on which we granted certiorari and is discussed in this opinion.

6. An employee appointed to a position under the state personnel system who has satisfactorily completed any required probationary period is to be certified to the corresponding class or position within that system. Colo. Const. art. XII, § 13(10); § 24–50–115(6), 10B C.R.S. (1988). Such a person is commonly referred to as a "certified employee." *See, e.g.*, § 24–50–125(2).

7. § 24–50–125, after reiterating the constitutional standards, provides, in pertinent part:

(2) Any certified employee disciplined under subsection (1) of this section shall be notified by the appointing authority, by certified letter, no later than five days following the effective date of the action, of the action taken, the specific charges giving rise to such action, and the employee's right of appeal to the board [*i.e.*, Personnel Board]. A copy of such notification shall also be sent to the board. Upon failure of the appointing authority to so notify the employee, the employee shall be compensated in full for the five-day period and until proper notification is received.

In addition, the Personnel Board has prescribed rules that elaborate on the procedures delineated in the statutes for disciplining certified employees. *See* Ch. 8, 4 C.C.R. 801–1 (1989); Ch. 10, 4 C.C.R. 801–1 (1993).[8] An appointing authority can discipline an employee for failure to comply with standards of efficient service or competence, for willful misconduct, and for willful failure or inability to perform assigned duties. Rule 8–3–3(C), 4 C.C.R. 801–1 (1991). Before an appointing authority can take disciplinary action against an employee, the appointing authority must meet with the employee. Rule 8–3–3(D)(1), 4 C.C.R. 801–1 (1992). At this meeting, the appointing authority must inform the employee of the information indicating the possible need for disciplinary action and give the employee an opportunity to respond. *Id.* This meeting is not a formal hearing but rather an opportunity for the parties to exchange information. *Id.* The appointing authority must consider any written or oral information that the employee provides before making a final decision. Rule 8–3–3(D)(1)(a), 4 C.C.R. 801–1 (1992).

If after the meeting the appointing authority decides to take disciplinary action, the appointing authority must notify the employee of its decision. Rule 8–3–3(D)(4), 4 C.C.R. 801–1 (1990). In this notice the appointing authority must delineate the specific charges giving rise to the disciplinary action and inform the employee of his right to petition the Personnel Board for a hearing. § 24–50–125(3); Rule 8–3–3(D)(4). If the employee does not petition the Personnel Board for a hearing within ten days of receiving notice of the appointing authority's action, or within such additional time granted by the Personnel Board, the action will become final and unreviewable. § 24–50–125(3).

█ Upon petition of an employee "for a hearing upon the action taken" by the appointing authority, however, the Personnel Board must hold a hearing. § 24–50–125(4). A hearing officer[9] may conduct this hearing for the Personnel Board and render an initial decision. Rule 10–9–1, 4 C.C.R. 801–1 (1994); *see* § 24–4–105, 10A C.R.S. (1988); § 24–50–125.4(3), 10B C.R.S. (1988). The hearing is *de novo* and adversarial in nature. *See* § 24–50–125(4), 10B C.R.S. (1988); § 24–4–105(7), 10A C.R.S. (1988). The employee is entitled to be represented, to present oral and documentary evidence, and to conduct cross examination of adverse witnesses. § 24–50–125(4); 24–4–105(7). The hearing officer must make written findings of fact and conclusions of law affirming, modifying, or reversing the appointing authority's decision. § 24–50–125(4); Rule 10–9–2, 4 C.C.R. 801–1 (1986). The standard of review of the appointing authority's action is delineated in section 24–50–103(6), 10B C.R.S. (1988), which states:

> An action of … an appointing authority … may be reversed or modified on appeal to the board only if at least three members of the board find the action to have been

(3) Within ten days after the receipt of the notification required by subsection (2) of this section or within such additional time as may be permitted by the board in unusual cases for good cause shown, the employee may petition the board for a hearing upon the action taken. Upon receipt of such petition, the board shall grant a hearing to the employee. If the employee fails to petition the board within ten days or within such additional time granted by the board, the action of the appointing authority shall be final and not further reviewable. (4) At such hearing, which shall be held within forty-five days of receipt of the employee's petition, the employee shall be entitled to representation of his own choosing at his own expense. The board shall cause a verbatim record of the proceedings to be taken and shall maintain such record. At the conclusion of such hearing, but not later than forty-five days

after the conclusion of such hearing, the board shall make public written findings of fact and conclusions of law affirming, modifying, or reversing the action of the appointing authority, and the appointing authority shall thereupon promptly execute the findings of the board.

(6) Disciplinary hearings shall be limited to those specified in this section.

8. A "disciplinary action" is an action that "adversely affect[s] the current base pay, status, or tenure of the employee." Rule 8–3–3(A), 4 C.C.R. 801–1 (1992). Thus, the regulations prescribing procedures for disciplinary actions apply to actions terminating a certified employee.

9. In the present case an ALJ acted as the hearing officer.

arbitrary, capricious, or contrary to rule or law.[10]

After the hearing officer issues an initial decision, either party may appeal to the Personnel Board to "modify" the decision. § 24–50–125.4(4), 10B C.R.S. (1988). The Personnel Board then must review the decision under standards set forth in section 24–4–105(15)(b), 10A C.R.S. (1988).[11] Once the Personnel Board makes a final determination, either party may appeal this decision to the court of appeals. § 24–50–125.4(3).

## III.

At issue in this case is which party, the employee or the appointing authority, bears the burden of proof in an evidentiary hearing before the Personnel Board to review an appointing authority's disciplinary action. Both parties agree that section 24–4–105(7), 10A C.R.S. (1988), governs this dispute. This statute requires that "[e]xcept as otherwise provided by statute, the proponent of an order shall have the burden of proof" in an administrative hearing. The Department argues that the plain meaning of the term "proponent of an order" is the propounder of a thing—the person who brings forward a matter for litigation or action. *See Orsinger Outdoor Advertising, Inc. v. Department of Highways,* 752 P.2d. 55, 67 (Colo.1988). Because an employee disciplined by an appointing authority must petition the Personnel Board for a hearing, the Department asserts that the employee is the proponent of an action by the Personnel Board to modify or revoke the appointing authority's action. We

agree that the proponent of an order is the person who brings forward a matter. However, after considering the constitutional protections afforded certified state employees, we hold that in disciplinary hearings before the Personnel Board the appointing authority is the party bringing the charges against the employee and the propounder of the employee's dismissal. Therefore, the appointing authority has the burden of proof in disciplinary hearings before the Personnel Board.

Section 24–4–105(7) places the burden of proof in an administrative hearing on the proponent of an order. The procedural requirement that a certified state employee petition for a hearing before the Personnel Board to contest a disciplinary action imposed by the appointing authority does not conclusively determine which party, the employee or the appointing authority, is the proponent of an order. In the absence of an employee's petition for a disciplinary action hearing before the Personnel Board, the disciplinary "action of the appointing authority shall be final and not further reviewable." § 24–50–125(3). If an employee files such a petition, however, a *de novo* hearing must be held at which the Personnel Board or its representative must make findings of fact and conclusions of law affirming, modifying, or reversing the action of the appointing authority. *See* § 24–50–125(4). At the hearing, the scales are not weighted in any way by the appointing authority's initial decision to discipline the employee. Because the employee initiates the disciplinary hearing by filing a petition, the employee is, in a sense, the proponent of an order of reversal of the

---

10. We acknowledge there is some tension between the arbitrary, capricious, or contrary to rule or law standard delineated in § 24–50–103(6) and the requirement that hearing officers make findings of fact and conclusions of law based on the record before them. We hold, however, as was agreed by both parties at oral argument, that the hearing before the Personnel Board is *de novo.* The hearing officer makes an independent finding of whether the evidence presented justifies a dismissal for cause. *See Kinchen,* 867 P.2d at 11–12 (in the present case the hearing officer's finding of evidentiary fact established that Kinchen did not do the acts for which he was disciplined, so implicitly the Department's action in terminating his employment was "arbitrary, capricious, or contrary to rule or law" within the meaning of § 24–50–103(6)).

11. § 24–4–105(15)(b) provides:

The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the administrative law judge or the hearing officer shall not be set aside by the agency on review of the initial decision unless such findings of evidentiary fact are contrary to the weight of the evidence. The agency may remand the case to the administrative law judge or the hearing officer for such further proceedings as it may direct, or it may affirm, set aside, or modify the order or any sanction or relief entered therein, in conformity with the facts and the law.

disciplinary action. However, because the disciplinary hearing is conducted *de novo*, the appointing authority is also the proponent of an order by the Personnel Board—an order affirming the appointing authority's disciplinary action.[12] Since each party, the appointing authority and the employee, may be characterized as the proponent of an order in disciplinary hearings before the Personnel Board, section 24–4–105(7) does not definitively place the burden of proof on either party.

 The Colorado Constitution, however, provides the guidance that this statute lacks. The Colorado Constitution guarantees that certified employees in the "personnel system of the state shall hold their respective positions during efficient service."[13] . Colo. Const. art. XII, § 13(8). Once an employee acquires this right by being certified, the employee may be discharged only for just cause based on constitutionally specified criteria. *Id.* We have characterized "discharge or discipline only for just cause" as a "central feature" of the state personnel system. *D.O.H.*, 809 P.2d at 991. This constitutional provision ensures that state employees are hired and discharged on the basis of merit and fitness. *See Colorado Ass'n of Public Employees v. Board of Regents*, 804 P.2d 138, 144 (Colo.1990); *Colorado Ass'n of Public Employees v. Lamm*, 677 P.2d 1350, 1359 (Colo.1984). Implicit in this protection for certified state employees is the principle that an appointing authority must establish a constitutionally authorized ground in order to discharge such an employee. The forum in which the appointing authority must establish just cause if the employee does not accede to the appointing authority's order of discharge is the disciplinary hearing before the Personnel Board. If this were not required, there would be little check on the constitutional sufficiency of an appointing authority's standards in imposing discipline. For, as previously described, the procedures leading up to imposition of disciplinary action are informal and afford little protection to an employee accused of misconduct. Therefore, the constitutional requirement that an appointing authority may terminate a certified employee only for just cause dictates that the burden of proof at the disciplinary hearing must be borne by the appointing authority.

 In addition, section 24–4–105(7) should be interpreted in conjunction with the general statutory framework for disciplining certified state employees. This framework is designed to protect a certified state employee's constitutional right to continued employment absent just cause and to ensure termination decisions based on constitutionally sufficient criteria. Upon petition, an employee is entitled to a hearing before the Personnel Board reviewing an appointing authority's disciplinary action. An appointing authority cannot discipline a certified state employee

---

12. The parallel to civil actions involving wrongful discharge in various contexts is instructive. In disputes where wrongful discharge is relevant, the employer asserting just cause for discharge has typically been required to bear the burden of proving just cause. *Bosche v. Lear Petroleum Exploration, Inc.*, 816 F.2d 1460, 1463–1464 (10th Cir.1987); *Lucas v. Whittaker Corp.*, 470 F.2d 326, 328 (10th Cir.1972); *Reussow v. Eddington*, 483 F.Supp. 739, 744 (D.Colo.1980); *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058–1059 (Colo.1992); *Pittman v. Larson Distributing Co.*, 724 P.2d 1379, 1386 (Colo.App. 1986). It would seem inconsistent to afford certified state employees, who have a constitutional property right in continued employment, *see infra* n. 13, less protection than employees in the private sector involved in disputes concerning reasons for discharge.

13. This section also creates a property interest in continued employment for certified state employees. *Adams County School Dist. v. Dickey*, 791 P.2d 688, 694 (Colo.1990). The United States Constitution protects individual property interests by requiring that "no state shall deprive an individual of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Similarly, the Colorado Constitution provides that "[n]o person shall be deprived of life, liberty or property, without due process of law." Colo. Const. art. II, § 25. Both provisions ensure that individuals will be afforded adequate process prior to state deprivation of their property. Thus, certified state employees are entitled to due process prior to termination of employment. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 535, 538–539, 105 S.Ct. 1487, 1489–90, 1491, 84 L.Ed.2d 494 (1985); *Arnett v. Kennedy*, 416 U.S. 134, 136, 164–167, 94 S.Ct. 1633, 1636, 1649–51, 40 L.Ed.2d 15 (Powell, J., concurring) (1974); *Board of Regents v. Roth*, 408 U.S. 564, 577–578, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman*, 408 U.S. 593, 602–603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972).

without giving the employee an opportunity to petition for a hearing. The purpose of this hearing is to ensure that an employee is not disciplined without good cause and to protect employees from arbitrary and capricious action. *See Coopersmith v. City and County of Denver*, 156 Colo. 469, 479, 399 P.2d 943, 948 (1965) (holding that the "purpose of civil service legislation is to protect employees from arbitrary and capricious political action and insure employment during good behavior"). In addition, as both parties to the present case agree, the hearing before the Personnel Board is *de novo* in character. This is confirmed by the provisions of section 24–50–125(4) requiring a "verbatim record of the proceedings" at the "hearing" and obligating the board to make "written findings of fact and conclusions of law." An employee is entitled to representation, to present oral and documentary evidence, and to cross examine adverse witnesses. § 24–50–125(4); § 24–4–105(7). All these procedural safeguards ensure that an appointing authority does not erroneously or unfairly terminate a certified state employee. Placing the burden of proof on the appointing authority during a disciplinary hearing before the Personnel Board is consistent with and will further guarantee a certified state employee's constitutional and statutory right to be discharged only for cause.

▇▇▇▇▇ We find considerations of fairness also support requiring the appointing authority to present and prove its accusations at the Personnel Board hearing. As we stated in *State Civil Service Comm'n v. Hoag*, 88 Colo. 169, 180, 293 P. 338, 342 (1930), in discussing the constitutional amendment that established the state civil service system, "A public official is presumed to act honestly, faithfully and efficiently and the burden of proving that he has failed to so act is upon the one who seeks to oust him." Implicit in the requirement that the appointing authority have just cause is, that the appointing authority must prove its reasons for discharge before a neutral decision-maker. The fact that procedurally an employee, in order to require an appointing authority to prove just cause, must appeal a termination decision to the Personnel Board does not change the fact that the appointing authority is the party attempting to overcome the presumption of satisfactory service and to discipline the employee.

In addition, considerations of procedural efficiency also support placing the burden of proof on an appointing agency during disciplinary hearings before the Personnel Board. First, the agency knows the reasons for its actions and is in the best position to present this information to the hearing officer. Second, to place the burden of proof on the employee would require the employee to prove that the events or actions in question did not happen. In effect, the employee would be required to prove a negative. Third, the appointing authority should have made a thorough investigation before deciding to terminate the employee; it should be little hardship for the appointing authority to present the results of its labor to the hearing officer.[14] Therefore, in order to give effect to the principle of discharge only for just cause, which is a central feature of the state personnel system as established by the Colorado Constitution, we hold that the employer must bear the burden of establishing just cause for discharge by a preponderance of the evidence at the hearing before the Personnel Board.

## IV.

Other state courts construing statutory schemes similar to ours in many respects have also imposed the burden of proof on the employer in hearings concerning the disciplining of state employees. *Parker v. City of Fountain Valley*, 127 Cal.App.3d 99, 179 Cal. Rptr. 351, 359 (1981) (holding that since the administrative hearing was the first evidentiary inquiry into the facts giving rise to discharge, the city, not the employee, was required to bear the burden of proof); *Florida Dept. of Health and Rehabilitative Services v. Career Service Comm'n*, 289 So.2d 412, 414–415 (Fla.Dist.Ct.App.1974) (holding that the burden of proof in an evidentiary hearing on appeal from dismissal from em-

---

14. There is especially little hardship if it is true, as the Department states in its brief, that the majority of state employees who are disciplined do not appeal to the Personnel Board.

ployment is on the agency terminating the employee; fact that the aggrieved employee must initiate the hearing does not alter this burden); *Dept. of Health and Welfare v. Sandoval,* 742 P.2d 992, 994–995 (Idaho Ct. App.1987) (holding that proceedings on appeal before the commission reviewing agency termination of an employee are *de novo* and the agency bears the burden of persuading the commission that employee misconduct has occurred).

In *Heidebur v. Parker,* 505 S.W.2d 440 (Mo.Ct.App.1974), a case analogous to the one before us, the Missouri Court of Appeals held that the St. Louis County Board of Police Commissioners denied a police officer due process when it required the police officer to put his case on first and to bear the burden of proof in an evidentiary hearing reviewing the Superintendent of Police's termination decision. The court ruled that the Superintendent should have the burden of proof in this hearing and should have been required to put on his case first. *Id.* at 443. The court specifically rejected the contention that because the police officer must appeal to the Board of Police Commissioners he should have the burden of proof. The court stated:

> Since a police officer, when he is commissioned, acquires a right or title to the office and its emoluments and such privilege is entitled to protection, fair treatment would seem to dictate that when one seeks to deprive him of that office, that person or agency should have the burden of proving the officer's conduct has disqualified him from holding that position of trust. Here what is styled by the Board as an appeal, is, in fact, even from a cursory reading of the transcript a de novo hearing of the entire controversy. *Thus, since the Board hearing was the first evidentiary hearing of an adversary nature, we hold that the Superintendent has the burden of proof and should have been required to put on his case first . . . .*

*Id.* at 444 (emphasis added and citations omitted); *see also Tonkin v. Jackson County Merit System Comm'n,* 599 S.W.2d 25 (Mo. Ct.App.1980); *Cole v. Litz,* 562 S.W.2d 795 (Mo.Ct.App.1978).

15. *See supra,* at n. 4.

V.

The facts of the present case illustrate the need for the Personnel Board hearing and for requiring the burden of proof to be borne by the appointing authority. The Department conducted a Rule 8–3–3 meeting [15] at which Kinchen was first apprised of the allegations against him and given an opportunity to respond. At this meeting, Kinchen did not know who had made the allegations against him and was not given an opportunity to test the accuracy of the allegations through any kind of cross examination. In addition, Kinchen did not have the opportunity to present other witnesses who might have information regarding the incidents in question. Schutter, the individual making the final decision regarding termination, acknowledged he did little investigation. In large part, Schutter's decision came down to who he thought was more credible, Taylor or Kinchen. Schutter did not speak to other staff members at Ridge who may have witnessed the events in question. Schutter did not interview staff members at Ridge regarding Kinchen's general demeanor and handling of clients. Tellingly, the ALJ, an impartial decision-maker, found that Taylor was not credible and therefore ordered reinstatement of Kinchen. In this case, the pre-termination "hearing" procedures were not extensive and did not ensure an accurate result. The post-termination hearing before the Personnel Board is the mechanism through which an employee is assured of a fair hearing and a full consideration of the issues. Placing the burden of proof on the appointing authority is the best way to test the appointing authority's decision and the reasons for its actions. This in turn will lead to the fairest and most accurate result, which is essential to protect a certified state employee's right to continued employment absent constitutionally authorized grounds for discharge.

VI.

The Department argues that our decision in *Renteria v. Dept. of Personnel,* 811 P.2d

797 (Colo.1991), controls this case. In *Renteria* the Colorado Department of Labor and Employment revised an employee's job description as part of its reorganization plan. This revision resulted in a reduction in pay. The employee appealed this reallocation decision to the State Personnel Director (Director) pursuant to section 24–50–104(3)(g), 10B C.R.S. (1988).[16] The hearing before the Director was governed by section 24–4–105(7). We determined that the employee was the moving party before the Director and the proponent of an order within the meaning of section 24–4–105(7) because the employee sought an order voiding the reallocation of his position.

*Renteria* is distinguishable from the present case. *Renteria* involved an appeal to the Director from a reallocation decision pursuant to section 24–50–104(3)(g), whereas the case before us involves an appeal of a disciplinary decision pursuant to Article XII, section 13(8), of the Colorado Constitution. A reallocation decision is part of the necessary review of work functions that an employer must make periodically to assure organizational efficiency. Unlike a hearing regarding discipline of an employee, reallocation decisions do not involve difficult judgments about credibility. Most importantly, such decisions do not involve allegations of misconduct against an employee, implicating the protections against wrongful discipline embodied in Article XII, section 13(8), of the Colorado Constitution.

The citizens of this state have recognized and protected the important interest state employees have in continued employment through enactment of Article XII, section 13(8), of the Colorado Constitution. This right must be vigilantly protected by requiring the employer to bear the burden of proof of cause for discipline in hearings before the Personnel Board.

We therefore affirm the judgment of the Colorado Court of Appeals.

ROVIRA, C.J., dissents and SCOTT, J., joins in the dissent.

VOLLACK, J., does not participate.

Chief Justice ROVIRA, dissenting:

I agree with the majority that the question we must decide is who must bear the burden of proof when an employee appeals an order terminating his or her employment to the Colorado State Personnel Board. Because I believe the constitution and statutes require the employee to bear that burden, I dissent.

## I.

The Colorado Constitution established the state personnel system in Article XII, section 13. Specifically, the constitution states:

A person certified to any class or position in the personnel system may be dismissed, suspended, or otherwise disciplined by the appointing authority upon written findings of . . . willful misconduct [or] willful failure or inability to perform his duties. . . . Any action of the appointing authority taken under this subsection shall be subject to appeal to the state personnel board with the right to be heard thereby in person or by counsel, or both.

Colo. Const. art. XII, § 13(8).

The legislature enacted the State Personnel System Act for the purpose of adopting "a sound, comprehensive, and uniform system of personnel management and administration for employees within the state personnel system as defined by the state constitution." § 24–50–101, 10B C.R.S. (1988).

---

**16.** At the time, § 24–50–104(3)(g) provided:

Any employee directly affected by the allocation of a position to a class may file a written appeal of such allocation with the state personnel director within ten days after notice of the allocation. The appeal shall be heard by the state personnel director or, at his delegation, a three member panel within sixty calendar days after the written appeal has been received by the state personnel director. Said director or panel shall review the appeal in summary fashion on the basis of written material which may be supplemented by oral argument at the discretion of the director or panel. . . . The allocation decision may be overturned only if the director or panel finds it to have been arbitrary, capricious, or contrary to rule or law. In 1993 the legislature amended this section in respects not relevant to the issue presented here. *See* ch. 89, sec. 1, § 24–50–104, 1993 Colo.Sess. Laws 299.

The Act sets forth the applicable procedures for disciplining a certified state employee.

Section 24–50–125(1), 10B C.R.S. (1988), closely resembles the list of disciplinable conduct found in Article XII, section 13(8). Section 125(2) provides that any employee disciplined under subsection (1) must receive notice from the appointing authority "of the action taken, the specific charges giving rise to the action, and the employee's right to appeal to the board." § 24–50–125(2). Subsection (3) continues:

> [w]ithin ten days after the receipt of the notification ... the employee may petition the board for a hearing on the action taken. Upon receipt of the petition, the board shall grant a hearing to the employee. If the employee fails to petition the board within ten days ... the action of the appointing authority shall be final and not further reviewable.

§ 24–50–125(3). Section 24–50–125(4) describes the appropriate time limits within which the appeal hearing must take place and the decision must be made, but does not describe the procedures to be used. Section 24–50–125.4, 10B C.R.S. (1988), repeats the time limits of section 24–50–125(4) and requires the employee as appellant to "allege with particularity the specific acts appealed and the reasons for the appeal." Section 24–50–103(6), 10B C.R.S. (1988), establishes the standard of review for an action by the appointing authority.

> An action of ... an appointing authority which is appealable pursuant to this article or the state constitution may be reversed or modified on appeal to the board only if at least three members of the board find the action to have been arbitrary, capricious, or contrary to rule or law.

Section 24–4–105, 10A, C.R.S. (1988), sets out procedures applicable to all administrative hearings unless a statute dictates otherwise. Both parties agree that section 24–4–105(7) controls the question to be resolved. Subsection 105(7) places the burden of proof on the proponent of an order.

## II.

When interpreting a constitution or statute the court must first look to the language used and give the words of the constitution or statute their ordinary and commonly accepted meaning. A presumption exists that the legislature adopted the language and structure of constitutional provisions by choice and exercised discrimination in selecting the language and structure. *White v. Anderson,* 155 Colo. 291, 298, 394 P.2d 333, 336 (Colo.1964). When the legislature uses a word with a known legal meaning, it must be assumed the word has such a meaning in the absence of clear intent to the contrary. *Westerlund v. Black Bear Min. Co.,* 203 F. 599, 605 (8th Cir.1913).

The constitution and statutes dictate that the employee "appeal" the appointing authority's action of dismissal, suspension or other discipline. Section 24–50–125(3), 10B C.R.S. (1988), establishes that the employee is the moving party and petitioner in the appeal hearing. The burden is on the employee to contest the appointing authority's action and petition for a hearing. A petition for a hearing, as used in section 24–50–125(3), is an appeal of the appointing authority's action. If the employee does not appeal, the appointing authority's action is final. *Id.*

The term appeal is used in a legal context to describe a continuation of an original suit rather than the beginning of a new action. 4 Am.Jur.2d *Appeal and Error* § 2 (1964). It is "[a] complaint to a higher tribunal of an error or injustice committed by a lower tribunal, in which the error or injustice is sought to be corrected or reversed." *Black's Law Dictionary* 96 (6th ed. 1990). It "is not the same as an 'action for judicial review'" of an agency order. *Tassian v. People,* 696 P.2d 825, 827 (Colo.App.1984), *rev'd on other grounds,* 731 P.2d 672 (Colo.1987).

Section 24–4–105(7), 10A C.R.S. (1988), states "the proponent of an order shall have the burden of proof" in administrative proceedings. "The 'proponent' is that party who propounds or proposes something." *Orsinger Outdoor Adv. v. Department of Highway,* 752 P.2d 55, 67 (Colo.1988) (citing *Black's Law Dictionary* 1097 (5th ed. 1976)).

In an appeal, the petitioner or appellant takes an appeal from a judgment. *Black's Law Dictionary* 97, 1146 (6th ed. 1990).

Lower court decisions are presumed correct and the person claiming error must prove the lower court erred. *Hinshaw v. Dyer,* 166 Colo. 394, 397, 443 P.2d 992, 993 (1968). The appellant is the "proponent" of an appeal. Administrative law reflects this same principle. A presumption of validity attaches to an agency action and the burden of proof rests upon the challenging party. *Colorado Health Care Ass'n v. Colorado Dep't of Social Serv.,* 842 F.2d 1158, 1164 (10th Cir. 1988). Therefore, the employee, as the appellant, is the proponent of an order seeking relief from the action taken by the appointing authority and has the burden of proof.

The constitution and statutory scheme support the conclusion that these well-established principles apply in this case. The constitution provides "[a]ny action of the appointing authority ... shall be subject to appeal to the state personnel board...." Colo. Const. art. XII, § 13(8). Section 24–50–125 tracks the language of the constitution that an employee has a right to appeal. *See* § 24–50–125(2), (3), (4). The Personnel Board presumes the appointing authority's action is correct because it can only be reversed or modified if at least three members of the Board find the action to be arbitrary, capricious, or otherwise contrary to rule or law. § 24–50–103(6). The employee is the proponent of an order to the Personnel Board to reverse or modify the appointing authority's action. *Id.* Kinchen appealed the action of the appointing authority terminating his employment and should bear the burden of proof in the appeal.

Additionally, Colorado case law places the burden on the employee. *Renteria v. State Dep't of Personnel,* 811 P.2d 797 (Colo.1991), addressed the definition of a proponent under section 24–4–105(7) and held the employee was the proponent of the order. "Renteria was the moving party before the Panel because he sought an order voiding the reallocation of his position." *Id.* at 803. The majority attempts to distinguish this case on the ground that the reallocation is pursuant to a separate statutory section. Maj. op. at 710. It maintains a disciplinary action has allegations of misconduct and issues of credibility unlike a reallocation decision. *Id.*

This analysis overlooks the fact that both cases fall under section 24–2–105(7). Subsection (7) contains no distinctions between disciplinary and allocation proceedings. The burden of proof provision applies uniformly to all actions before the Colorado State Personnel Board. In *Garner v. Colorado State Department of Personnel,* 835 P.2d 527, 531 (Colo.App.1992), the court of appeals followed *Renteria*'s placement of the burden of proof on the person seeking to set aside the agency's action. The court found "the burden of proof was properly placed on the plaintiff to show the panel that the selection and examination process conducted for the state lottery director position was arbitrary, capricious, or contrary to rule or law." *Id.* Both *Renteria* and *Garner* construe section 24–4–105(7) as it applies to administrative appeals under the state personnel system and both placed the burden of proof on the person challenging the agency action.[17] These cases are not distinguishable from *Kinchen.*

Indicative of the misconception under which the majority labors is its holding that "in disciplinary hearings before the Personnel Board the appointing authority is the party bringing the charges against the employee and the propounder of the employee's dismissal." Maj. op. at 706. A straightforward reading of the constitution and statutes clearly establishes that the appointing authority does not bring charges against the employee which are to be resolved by the Personnel Board.[18] Rather, the appointing authority makes decisions and takes action concerning discipline, and it is only if the employee disagrees with that action and appeals that the Personnel Board has any role to play. In short, the Personnel Board acts as an appellate tribunal not as a tribunal to which the appointing authority must go and seek authority to discipline an employee.

---

17. As discussed by the majority, other states have placed the burden of proof on the department. *See* Maj. op. at 708–709. However, these cases are not persuasive because different constitutional and statutory provisions were applicable.

18. The appointing authority administers corrective and disciplinary procedures on charges of misconduct. Rule 7–1–2, 4 CCR 801–1 (1992).

The majority acknowledges the employee is the proponent of an order to reverse the disciplinary action but ultimately places the burden of proof on the appointing authority as the proponent of an order affirming the disciplinary action. Maj. op. at 707. This contradicts established principles of administrative law which require the person challenging the agency action to bear the burden of proving error. *Colorado Health Care Ass'n v. Colorado Dep't of Social Serv.*, 842 F.2d 1158, 1164 (10th Cir.1988).

The majority's statement that "the scales are not weighted in any way by the appointing authority's initial decision to discipline the employee" is simply incorrect. Maj. op. at 706. The arbitrary or capricious standard of review tips the scales in favor of the agency. The majority noted the tension between the arbitrary, capricious, or contrary to rule or law standard in section 24–50–103(6) and the requirement that the board make findings of fact and conclusions of law based on the record. Maj. op. at 706 n. 10. By holding that the hearing officer makes an independent finding of whether the evidence presented justifies a dismissal for cause, the majority disregards the statutory standard of review.[19] *Id.*

The problem lies in the majority's characterization of the issue appealed by Kinchen. The majority claims the Board has *de novo* review of whether the appointing authority had just cause to dismiss him. Maj. op. at 706. It allows the implication that an employee receives a *de novo* hearing to trump the express statutory standard of review.[20]

Cases from other jurisdictions provide guidance as how to resolve this tension. In *Redmond v. United States*, 507 F.2d 1007, 1010–11 (4th Cir.1975), plaintiff argued that in a trial *de novo*, regarding disqualification of participation in the Food Stamp Program, the agency had to prove the facts necessary to justify its actions. Redmond wanted the district court to proceed as if no agency action had been taken. The court held by

allowing for a trial *de novo*, Congress intended nothing more than that the district court would not be bound by the administrative record. *Id.* at 1011. It did not alter the burden of proof on the plaintiff to show he or she is entitled to relief.

Construing the statutory scheme as a whole, the issue is whether the appointing authority acted arbitrarily, capriciously, or contrary to rule or law in terminating Kinchen. This incorporates both the statutory standard of review and the *de novo* review. In *Sanchez v. Huntsville Independent School District*, 844 S.W.2d 286 (Tex.Ct.App.1992), the court interpreted two statutes one allowing for *de novo* review and the other imposing a substantial evidence standard. It found the appropriate standard was substantial evidence *de novo*. *Id.* at 290. The court placed the burden on the appellant in accordance with general rules of administrative law. *Id.* "It is the complaining party, in this case the appellant, who has the burden of showing an absence of substantial evidence to support the school district's decision." *Id.* See *Arkansas Transit Homes, Inc. v. Stone*, 301 Ark. 323, 783 S.W.2d 860, 862 (1990) (court conducting *de novo* review will not disturb findings unless against preponderance of the evidence).

*De novo* review is possible for an arbitrary and capricious standard. *Joudeh v. United States*, 783 F.2d 176, 178 (10th Cir.1986) (on *de novo* review the court determines whether sanctions were arbitrary and capricious); *Haskell v. United States Dep't of Agriculture*, 743 F.Supp. 765, 769 (D.Kan.1990) ("It is well established in this circuit that the USDA's imposition of sanctions should be upheld on *de novo* review unless the court finds the Secretary's choice of sanctions is arbitrary and capricious."). *De novo* review of whether the appointing authority acted arbitrarily and capriciously gives effect to all statutory sections.

Review of the Colorado Constitution, the statutes enacted pursuant to the constitution,

---

**19.** The court of appeals held the hearing officer implicitly determined the department acted arbitrarily and capriciously by finding Kinchen did not commit the acts for which he was terminated. *Kinchen*, 867 P.2d at 12.

**20.** Both parties concede review is *de novo*, therefore it is unnecessary to examine this issue.

and case law supports the conclusion that on appeal from the action of the appointing authority, the burden is on the employee to establish the authority acted arbitrarily, capriciously, or contrary to rule or law. Therefore, I dissent.

SCOTT, J., joins in this dissent.