Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 21, 2020

**2020 CO 90**

**No. 19SC107, *DOC v. Stiles*—"Arbitrary, Capricious, or Contrary to Rule or Law" Standard of Review—§ 24-50-103(6), C.R.S. (2020)—State Personnel Board—Appointing Authority—Disciplinary Action.**

After a certified state employee's random urinalysis tested positive for marijuana, he was terminated by the appointing authority employing him.  He appealed to the Colorado State Personnel Board ("the Board").  Following a hearing, an Administrative Law Judge ("ALJ") acting on behalf of the Board issued an initial decision reinstating the employee and imposing a less severe sanction.  The Board then adopted the initial decision, and a division of the court of appeals affirmed the Board's ruling.  The appointing authority appealed, and the supreme court agreed to take the appeal in the hopes of shedding light on the standard that governs the Board's review of an appointing authority's decision to discipline a certified state employee.

The court holds that, while an ALJ conducting a hearing on behalf of the Board must afford the disciplined employee an opportunity to present evidence

and must then make findings of fact, the ALJ's review of the appointing authority's disciplinary action is governed by the statutorily mandated "arbitrary, capricious, or contrary to rule or law" standard, not "de novo" review. The distinction between the two standards is not without a difference. Unlike de novo review, the arbitrary, capricious, or contrary to rule or law standard accords a degree of deference to the appointing authority's disciplinary action.

Because the division misapprehended the standard of review that controls hearings held by or on behalf of the Board, and because the court can't discern whether the ALJ applied the correct standard of review or de novo review, it reverses the division's judgment and remands with instructions to return the case to the ALJ for further proceedings consistent with this opinion. On remand, as the ALJ considers whether the appointing authority's disciplinary action was arbitrary, capricious, or contrary to rule or law, he should make additional findings. As it relates to the arbitrary or capricious part of the standard, the ALJ should determine whether the appointing authority gave candid and honest consideration to the relevant evidence and whether reasonable people fairly and honestly considering the evidence must reach contrary conclusions. And, as it relates to the other part of the standard, the ALJ should address whether the appointing authority's disciplinary action contravened any rule or law.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 90

### Supreme Court Case No. 19SC107
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA1992

### Petitioner:

Department of Corrections, Denver Reception & Diagnostic Center,

v.

### Respondents:

Mathew Mark Stiles and State Personnel Board.

### Judgment Reversed
*en banc*
December 21, 2020

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Katherine Aidala, Senior Assistant Attorney General
Russell D. Johnson, Senior Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Respondent Mathew Mark Stiles:**
Greg D. Rawlings, P.C.
Greg D. Rawlings
  *Denver, Colorado*

**Attorneys for Respondent State Personnel Board:**
Philip J. Weiser, Attorney General
Billy L. Seiber, First Assistant Attorney General
Amy R. Lopez, Assistant Attorney General
*Denver, Colorado*

**Attorneys for Amicus Curiae Colorado State Agencies and Educational Institutions:**
Phillip J. Weiser, Attorney General
Stacy L. Worthington, Senior Assistant Attorney General
*Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Plaintiff Employment Lawyers Association:**
Roseman Law Offices, LLC
Barry D. Roseman
*Denver, Colorado*

Maxfield Gunning, LLP
Eric H. Maxfield
*Boulder, Colorado*

University of Colorado Law School Civil Practice Clinic
Zach Mountin
Matt Forstie
*Boulder, Colorado*

**Attorneys for Amicus Curiae Colorado Workers for Innovative and New Solutions:**
Schwane Law, LLC
Mark A. Schwane
*Denver, Colorado*

**Attorneys for Amicus Curiae Denise DeForest:**
DeForest Law, LLC
Denise DeForest
*Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1    The magnitude of the decision we are called upon to make in this case is not lost on us. At a micro level, it will affect whether Mathew Mark Stiles keeps his job at the Department of Corrections ("DOC"). At a macro level, it will affect the 30,000-plus other certified state employees in Colorado's personnel system.

¶2    When certified state employees are disciplined by the state agency employing them ("appointing authority"), they may appeal to the Colorado State Personnel Board ("the Board"). Stiles did just that after he was fired by DOC for using marijuana outside of work hours. After a hearing, an Administrative Law Judge ("ALJ") acting on behalf of the Board issued an initial decision reinstating Stiles and imposing a less severe sanction. The Board then adopted that initial decision, and a division of the court of appeals affirmed the Board's ruling. We agreed to take DOC's appeal in the hopes of shedding light on the standard of review that governs an appeal to the Board by a certified state employee following an appointing authority's disciplinary action. Is it de novo review? Or is it arbitrary, capricious, or contrary to rule or law?

¶3    We hold that, while an ALJ conducting a hearing on behalf of the Board must afford the disciplined employee an opportunity to present evidence and must then make findings of fact, the ALJ's review of the appointing authority's disciplinary action is governed by the statutorily mandated "arbitrary, capricious, or contrary to rule or law" standard, § 24-50-103(6), C.R.S. (2020), not de novo

3

review. The distinction between the two standards is not without a difference. Unlike de novo review, the arbitrary, capricious, or contrary to rule or law standard accords a degree of deference to the appointing authority's disciplinary action.

¶4 Because the division misapprehended the standard of review that controls hearings held by or on behalf of the Board, and because we can't discern whether the ALJ applied the arbitrary, capricious, or contrary to rule or law standard or de novo review, we reverse the division's judgment and remand with instructions to return the case to the ALJ for further proceedings consistent with this opinion. On remand, as the ALJ considers whether DOC's disciplinary action was "arbitrary, capricious, or contrary to rule or law," he should make additional findings.[1] As it relates to the arbitrary or capricious part of the standard, the ALJ should determine whether DOC gave "candid and honest consideration" to the relevant evidence and whether "reasonable [people] fairly and honestly considering the evidence must reach contrary conclusions." *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1252 (Colo. 2001) (quoting *Van De Vegt v. Bd. of Cnty. Comm'rs*, 55 P.2d 703, 705

---

[1] The applicable standard of review has two nonsequential parts: The Board (or an ALJ acting on behalf of the Board) may modify or reverse an appointing authority's disciplinary action if such action was (1) "arbitrary [or] capricious" or (2) "contrary to rule or law." § 24-50-103(6).

4

(Colo. 1936)).  And, as it relates to the other part of the standard, the ALJ should address whether DOC's disciplinary action contravened any rule or law.

## I.  Facts and Procedural History

¶5     In August 2010, DOC hired Stiles as a "floating" part-time correctional officer.  Later that year, DOC promoted him to the full-time equivalent of the same position.  Stiles became state-certified in 2011.  On June 1, 2015, he was reallocated to a new position—Correctional Support Trades Supervisor I–Boiler Operator. Between the date he was hired and June 2015, Stiles had some difficulties with punctuality and managing his paid leave balance, but he was never subject to corrective or disciplinary action and his evaluations consistently rated him as a competent DOC employee.

¶6     Things changed in the fall of 2015.  On September 28, 2015, DOC randomly selected Stiles for drug testing.  The next day, he submitted a confidential incident report apprising DOC that he had recently consumed marijuana but that there were extenuating circumstances responsible for such consumption.  On October 2, DOC received Stiles's test results, which were positive for THC, the main psychoactive ingredient in marijuana.

¶7     Investigator Scott Smith of DOC's Office of the Investigator General looked into the circumstances surrounding Stiles's positive urinalysis.  The pertinent information provided by Stiles during DOC's investigation is summarized below:

5

Beginning in 2015, Stiles began to experience a series of personal challenges, including marital discord and his daughter's schizophrenia diagnosis and related hospitalization. The stress of these challenges led to bouts of insomnia for some weeks or months. Two events that occurred in quick succession in late September 2015 exacerbated the situation. On Thursday, September 24, Stiles and his wife participated in a marital counseling session, which became emotional. The following day, Stiles argued with his daughter's birth mother regarding their daughter's conduct and condition.

As a result of the heightened anxiety he felt, at midnight on Friday, September 25, or early in the morning on Saturday, September 26, Stiles consumed some of his wife's medical marijuana in the hopes that it would help him sleep, which it did. The psychoactive effects of the marijuana consumed ended during the morning of Saturday, September 26, before Stiles returned to work.

Stiles was aware that consuming marijuana was a violation of DOC's regulations. And, despite having suffered bouts of insomnia for some time prior to the night of September 25, he neither sought the advice of a medical professional nor purchased an over-the-counter sleep aid.

Stiles was emotional and concerned about losing his job.

¶8 On October 13, Stiles received a hand-delivered "Notice of Rule 6-10 Meeting," which was signed by Warden David Johnson.[2] The notice stated in pertinent part:

---

[2] Pursuant to Board Rule 6-10, before disciplining a certified state employee, an appointing authority must hold a meeting with the employee both to inform the employee of the alleged basis for potential discipline and to allow the employee an opportunity to respond.

6

At this meeting, we will discuss the information that causes me to believe that disciplinary and/or corrective action may be appropriate. This information includes, but is not limited [to], the report that your most recent Urinary Analysis showed positive for the use of marijuana which may constitute a possible violation of [Administrative Regulation]/IA 1450-01, Code of Conduct.

¶9 Approximately a week later, Warden Johnson, with Major Jay Guilliams as his representative, and Stiles, with Lieutenant James DeTello (his immediate supervisor) as his representative, attended the Rule 6-10 meeting. Major Guilliams stated that Stiles's positive urinalysis was in violation of DOC Administrative Regulations ("AR") 1450-01 (Code of Conduct) and 1450-36 (Drug Deterrence Program). In response, Stiles admitted that he had made a mistake, explained the extenuating personal circumstances that had affected him recently, and pointed out that his performance evaluations had been good and that he had demonstrated initiative by taking advantage of training and advancement opportunities within DOC. Lieutenant DeTello vouched for Stiles, describing him as a valuable asset and confirming that DOC had invested time and effort into his training and advancement.

¶10 During the meeting, Warden Johnson inquired about the effect of the marijuana consumption on Stiles's work performance. Stiles responded that, while the *regular* consumption of marijuana could impact someone's trustworthiness and work performance, that was not a concern with him because

7

he had used marijuana only one time during his employment at DOC, on September 25, 2015. The meeting concluded with Stiles pleading for his job.

¶11 After the meeting, Lieutenant DeTello submitted Stiles's final performance review, which reflected an overall rating of Level II (meets expectations) and a communications and interpersonal skills rating of Level III (exceptional). Lieutenant DeTello later sent Warden Johnson a letter attesting to Stiles's work ethic and moral character.

¶12 On November 2, Warden Johnson issued a notice of disciplinary action discussing the issues raised during the Rule 6-10 meeting and terminating Stiles. Warden Johnson later explained that his decision to terminate Stiles was based on all the information received, including Stiles's statements at the Rule 6-10 meeting, Lieutenant DeTello's comments at that meeting, and Lieutenant DeTello's letter praising Stiles. According to Warden Johnson, the mitigating factors presented by and on behalf of Stiles were outweighed by multiple concerns: safety and security issues within the Denver Correctional Complex, the importance of modeling proper conduct for inmates, the risk of compromising staff and inmates, loss of trust from coworkers, the failure to follow the high community standards governing correctional professionals, the willful violation of DOC regulations, and Stiles's lack of credibility as a witness in future legal proceedings involving inmates.

8

¶13 Stiles timely appealed his termination to the Board and requested a hearing. An ALJ, acting at the request of the Board, conducted a hearing. After the hearing, the ALJ issued an initial decision reinstating Stiles, imposing a less severe disciplinary sanction of a ten-percent pay reduction for six months, and ordering back pay and benefits.

¶14 The ALJ found that Stiles's termination was "arbitrary and capricious" because, in the ALJ's view, Warden Johnson had failed to candidly and honestly consider some of the relevant evidence procured. But the ALJ's rationale was ambiguous. On the one hand, consistent with an arbitrary or capricious standard, the ALJ implied that the Warden had failed to candidly and honestly consider certain relevant evidence under Board Rule 6-9. Dep't of Pers. & Admin., 4 Colo. Code Regs. 801-1:6.9 (2020) (listing the factors on which an appointing authority's disciplinary action must be based). On the other, consistent with de novo review, the ALJ suggested that the Warden had considered all the relevant evidence—just not in the same way the ALJ would have—and had reached a disciplinary decision with which the ALJ disagreed. In terms of the latter point, the ALJ determined that the Warden had "failed to give *proper weight*" to, among other things, Stiles's "extraordinary mitigating circumstances," overall "solid performance," and unremarkable disciplinary record. (Emphasis added). As well, the ALJ noted that Stiles had demonstrated dedication to his job and that the conduct in question was

9

not so egregious as to warrant termination because it involved "a one-time" bad decision and the effects of the marijuana consumed had worn off before Stiles returned to work.

¶15 Having found that Warden Johnson's exercise of discretion was arbitrary and capricious, the ALJ addressed whether Stiles's termination was also "contrary to rule or law." The ALJ answered the question in the affirmative. Here again, however, the ALJ's initial decision is subject to different interpretations. On the one hand, the ALJ appeared to conclude that Warden Johnson's disciplinary decision was contrary to rule or law because the Warden had failed to account for some of the evidence Rule 6-9 requires appointing authorities to consider before disciplining a certified state employee. On the other, the "contrary to rule or law" determination may be understood as resting on the ALJ's disagreement with the weight accorded the Rule 6-9 evidence by Warden Johnson. True, the ALJ added that Warden Johnson had also run afoul of Rule 6-9 by imposing discipline that was not "within the range of reasonable alternatives." But Rule 6-9 does not list any disciplinary alternatives. And, to the extent the "range of reasonable alternatives" referenced in the ALJ's initial decision was premised on the ALJ's own view of possible appropriate sanctions for Stiles's misconduct, it could not serve as the basis for a "contrary to rule or law" finding.

10

¶16 DOC asked the ALJ to reconsider his initial decision, but the ALJ declined to do so. And the Board later adopted the ALJ's initial decision.

¶17 DOC then appealed, arguing that the Board had exceeded its authority under subsection 24-50-103(6), which provides that "[a]n action of . . . an appointing authority . . . may be reversed or modified on appeal to the board only if at least three members of the board find the action to have been arbitrary, capricious, or contrary to rule or law." A division of the court of appeals was not persuaded and affirmed. *Stiles v. Dep't of Corr., Denver Reception & Diagnostic Ctr.*, 2019 COA 10, ¶ 22, __ P.3d __. The division acknowledged the "arbitrary, capricious, or contrary to rule or law" standard of review set forth in subsection 24-50-103(6). *Id.* at ¶ 19. But, relying on our opinion in *Department of Institutions, Division for Developmental Disabilities, Wheat Ridge Regional Center v. Kinchen*, 886 P.2d 700, 706 (Colo. 1994), it held that an ALJ doesn't have to give any deference to an appointing authority's disciplinary decision. *Stiles*, ¶ 16. Instead, concluded the division, an ALJ "conducts a de novo review of the appointing authority's decision, weighs the evidence presented, and . . . make[s] findings of historical fact and ultimate conclusions . . . based on that evidence." *Id.*

¶18 The division noted that a Rule 6-10 meeting is informal in nature and simply aims to give the parties an opportunity to exchange information. *Id.* at ¶ 15 (citing *Kinchen*, 886 P.2d at 705). Such a meeting, continued the division, can hardly be

11

deemed to sufficiently protect the property interest of a state-certified employee accused of misconduct. *Id.* at ¶ 16 (citing *Kinchen*, 886 P.2d at 707). Since the forum where a certified state employee's property interest is protected is the hearing held by the Board (or by an ALJ acting on behalf of the Board), and since *Kinchen* referred to this hearing as a de novo hearing where "the scales are not weighted in any way by the appointing authority's initial decision to discipline," the division inferred that the applicable standard of review at that hearing is de novo. *Id.* at ¶ 16 (quoting *Kinchen*, 886 P.2d at 706). Reasoning that there was adequate support in the record for the ALJ's conclusion that DOC's disciplinary action was arbitrary, capricious, and contrary to rule or law, the division affirmed the Board's order adopting the ALJ's initial decision. *Id.* at ¶ 7.

¶19 DOC timely filed a petition for review in this court. We granted the petition to consider:

> Whether the State Personnel Board may only reverse or modify an appointing authority's disciplinary decision if at least three members of the Board find it to be arbitrary, capricious, or contrary to rule or law, and if so, whether this standard prevents the State Personnel Board from reviewing such a disciplinary decision de novo and without giving any deference to it.

## II. Analysis

¶20 We hold that, while an ALJ conducting a hearing on behalf of the Board must afford the disciplined employee an opportunity to present evidence and must then make findings of fact, the ALJ's review of the appointing authority's

12

disciplinary action is governed by the statutorily mandated "arbitrary, capricious, or contrary to rule or law" standard, § 24-50-103(6), not de novo review. The distinction between the two standards is not without a difference. Unlike de novo review, the arbitrary, capricious, or contrary to rule or law standard accords a degree of deference to the appointing authority's disciplinary action.

¶21 Because the division misapprehended the standard of review that controls hearings held by or on behalf of the Board, and because we can't discern whether the ALJ applied the arbitrary, capricious, or contrary to rule or law standard or de novo review, we reverse the division's judgment and remand with instructions to return the case to the ALJ for further proceedings consistent with this opinion.

¶22 Before addressing the merits of DOC's appeal in earnest, we take a short detour to examine the general procedural requirements governing the imposition of discipline on certified state employees. This background is necessary to place DOC's appeal in context. We extend our roundabout just long enough to articulate the standard of review that applies in this appeal. Only then do we get back on course and address the substantive issues presented.

## A. General Procedural Requirements Governing the Imposition of Discipline on Certified State Employees

¶23 Certified state employees have a protected property interest in their positions that prevents them from being disciplined without just cause based on constitutionally specified criteria, including, among other things, "failure to

13

comply with standards of efficient service or competence," "willful misconduct," or "willful failure or inability to perform . . . duties." Colo. Const. art. XII, § 13, cl. 8. This constitutional provision ensures that state employees are discharged on the basis of merit and fitness. *See Colo. Ass'n of Pub. Emps. v. Bd. of Regents of Univ. of Colo.*, 804 P.2d 138, 144 (Colo. 1990); *Colo. Ass'n of Pub. Emps. v. Lamm*, 677 P.2d 1350, 1359 (Colo. 1984).

¶24 Our legislature has enacted sections 24-50-125 to -125.5, C.R.S. (2020), to outline the procedural requirements with which an appointing authority and the Board must comply in order to further safeguard a certified employee's property interest in his position. Under subsections 24-50-125(2)–(4), C.R.S. (2020): (1) an appointing authority must notify the employee of any discipline; (2) if the employee appeals a disciplinary action and requests a hearing, the Board must hold a hearing; (3) the employee must be afforded legal representation at the hearing; and (4) the Board must make findings of fact and conclusions of law affirming, modifying, or reversing the appointing authority's disciplinary action.

¶25 In addition, the Board has prescribed rules that elaborate on some of the procedural requirements set forth in section 24-50-125. *See* Dep't of Pers. & Admin., 4 Colo. Code Regs. 801-1:6 (2020); Dep't of Pers. & Admin., 4 Colo. Code Regs. 801-1:8 (2020). Board Rules 6-9, 6-10, and 6-12 are of particular relevance here. We take them in reverse order.

¶26 Rule 6-12 outlines what constitutes just cause to discipline a certified state employee. We summarize below some of those grounds:

(1) failure to perform competently;

(2) willful misconduct or a violation of any State Personnel Board rule or law that affects the ability to perform the job;

(3) making false statements of fact during the application process for a state position;

(4) willful failure or inability to perform duties assigned; and

(5) final conviction of either a felony or any offense of moral turpitude that affects the employee's ability to perform the job.

Dep't of Pers. & Admin., 4 Colo. Code Regs. 801-1:6.12 (2020).

¶27 Rule 6-10, as we mentioned earlier, provides that prior to disciplining a certified state employee, an appointing authority must meet with the employee, inform the employee of the alleged just cause for discipline, and permit the employee to respond. Dep't of Pers. & Admin., 4 Colo. Code Regs. 801-1:6.10 (2020).

¶28 And Rule 6-9 requires an appointing authority to consider certain criteria in deciding whether to discipline a certified state employee:

The decision to take corrective or disciplinary action shall be based on the nature, extent, seriousness, and effect of the act, the error or omission, type and frequency of previous unsatisfactory behavior or acts, prior corrective or disciplinary actions, period of time since a prior offense, previous performance evaluations, and mitigating circumstances. Information presented by the employee must also be considered.

15

Dep't of Pers. & Admin., 4 Colo. Code Regs. 801-1:6.9 (2020).

¶29    In the event a certified employee timely appeals an appointing authority's disciplinary action and requests a hearing, an ALJ may conduct the hearing on behalf of the Board. § 24-50-103(7). If an ALJ does so, he must make written findings of fact and conclusions of law and render an initial decision affirming, modifying, or reversing the disciplinary action. §§ 24-50-125(4) to -125.4(3), C.R.S. (2020); *Colo. Dep't of Hum. Servs. v. Maggard*, 248 P.3d 708, 712 (Colo. 2011). Either party may then petition the Board to modify or reverse the ALJ's initial decision. § 24-50-125.4(4), C.R.S. (2020); *Kinchen*, 886 P.2d at 706. On review, the Board must accept the ALJ's findings of historical fact unless they are contrary to the weight of the evidence. § 24-4-105(15)(b), C.R.S. (2020); *Kinchen*, 886 P.2d at 706.

¶30    The Board's decision, in turn, is subject to review by the court of appeals. § 24-50-125.4(3). Such review is deferential. *Id.*; § 24-4-106(7), (11). Thus, we have said, "In reviewing the Board's decision, courts should give deference to the Board because it is a constitutionally created state agency with considerable expertise in personnel matters, and courts should resolve all reasonable doubts as to the correctness of the Board's decision in the Board's favor." *Maggard*, 248 P.3d at 712–13; *see also Lawley*, 36 P.3d at 1252 (noting that the supreme court was called upon to determine whether the Board had abused its discretion in concluding that the appointing authority's action was arbitrary or capricious).

16

## B. Standard of Review Applicable in This Appeal

¶31 What standard the Board (or an ALJ acting on behalf of the Board) must apply in reviewing an appointing authority's disciplinary decision is a question of law that we review de novo. *See A.R. v. D.R.*, 2020 CO 10, ¶ 37, 456 P.3d 1266, 1276 ("A determination of the proper legal standard to be applied in a case . . . [is a] question[] of law that we review de novo."). It follows that the propriety of the standard of review applied by the ALJ here is subject to our de novo review and is not entitled to the type of deference Board decisions are accorded.

## C. Discussion

¶32 Mindful of the procedural requirements governing the discipline of certified state employees and the standard of review applicable in this appeal, we now proceed to consider the substantive issues presented. We first conclude that the division misapprehended the standard of review that controls hearings held by or on behalf of the Board—the correct legal standard is whether the appointing authority's disciplinary action was arbitrary, capricious, or contrary to rule or law. We then examine the two pertinent prongs of the three-prong test that defines an "arbitrary [or] capricious" disciplinary action: (1) whether the appointing authority gave candid and honest consideration to the relevant evidence; and (2) whether reasonable people fairly and honestly considering the evidence must

17

reach contrary conclusions. We end by briefly analyzing the "contrary to rule or law" component of the applicable standard of review.

## 1. The Division Misapprehended the Standard of Review That Controls Hearings Held by or on Behalf of the Board

¶33 The division's articulation of the legal standard controlling hearings held by or on behalf of the Board lacked clarity and consistency. The division recognized the statutorily mandated "arbitrary, capricious, or contrary to rule or law" standard of review. *Stiles*, ¶ 19. In the next breath, though, it determined that the ALJ's review was de novo, that he was "free to weigh" the relevant evidence, and that he owed no deference to the Warden's decision. *Id.* at ¶¶ 16, 20. De novo review and the standard of arbitrary, capricious, or contrary to rule or law can't simultaneously apply. Unlike de novo review, the "arbitrary, capricious, or contrary to rule or law" standard is tempered by a degree of deference to the decision under scrutiny. Thus, while de novo review would have allowed the ALJ to reweigh the evidence, second-guess the appointing authority, and arrive at his own disciplinary decision, the arbitrary, capricious, or contrary to rule or law standard prevented him from doing so.

¶34 In fairness, we can't lay all the blame at the division's feet. We recognize that our foray into section 24-50-103 in *Kinchen* may well have led to confusion worse confounded. We hope that today's decision will clear any murky waters.

18

¶35 In *Kinchen*, we used the term "de novo" multiple times. *See, e.g.*, 886 P.2d at 705, 707–09. However, we did so strictly to describe the *nature* of the hearing that must be conducted by or on behalf of the Board when a state-certified employee seeks review of an appointing authority's disciplinary action. *Id.* at 705 (referring to a de novo hearing). We explained that a state-certified employee's constitutional protection is borne out in part by the adversarial, de novo nature of such a hearing. *Id.* at 707. More specifically, we recognized that during the hearing, the employee is entitled to receive legal representation, submit oral and documentary evidence, and cross-examine adverse witnesses. *Id.* at 708. We added that the Board or the ALJ must make written findings of fact and conclusions of law. *Id.*

¶36 *Kinchen*'s description of the nature of the hearing held by or on behalf of the Board as a de novo hearing is not surprising considering that a certified employee may introduce evidence and the Board or the ALJ is required to make written findings of fact. *Id.* at 705. But a hearing that is *de novo in nature* is fundamentally distinct from a hearing at which *de novo review* applies. Our references to a "de novo hearing" in *Kinchen*, while characterizing the nature of the hearing, did not speak to the legal standard of review applicable at the hearing. *Cf. Colo. Land Use Comm'n v. Bd. of Cnty. Comm'rs*, 604 P.2d 32, 36 (Colo. 1979) (explaining that a statutory reference to "review [d]e novo" did "not take on the meaning applied in

19

review of judicial or quasi-judicial proceedings" but instead was intended "to indicate that *any relevant evidence may be introduced*" (emphasis added)).

¶37    The legal standard of review that applies to an appeal to the Board by a certified state employee following an appointing authority's disciplinary action is set forth in subsection 24-50-103(6).  That subsection provides that an appointing authority's disciplinary action "may be reversed or modified on appeal to the board only if at least three members of the board find the action to have been arbitrary, capricious, or contrary to rule or law."  *Id.*  Though *Kinchen* quoted this subsection of the statute and expressly construed it as delineating "[t]he standard of review of the appointing authority's action," 886 P.2d at 705, it is now apparent that our multiple references to a "de novo hearing" has blurred the point and bred uncertainty.

¶38    Because the division conflated *the nature of the hearing* with the applicable *standard of review at the hearing*, it erred.  We now hold that, while an ALJ acting on behalf of the Board must conduct a de novo *hearing*, his *review* of an appointing authority's disciplinary action is governed by the statutorily mandated "arbitrary, capricious, or contrary to rule or law" standard.  § 24-50-103(6).  Hence, in reviewing an appointing authority's disciplinary action, the ALJ must logically focus on two analytical inquiries: (1) whether the alleged misconduct occurred; and, if it did, (2) whether the appointing authority's disciplinary action in response

20

to that misconduct was arbitrary, capricious, or contrary to rule or law. *See Kinchen*, 886 P.2d at 704–706.

¶39 Beyond adopting the division's misconstruction of our references to a de novo hearing in *Kinchen*, the Board and Stiles misperceive the circumscribed scope of our holding there. In *Kinchen*, we were confronted with a "narrow" issue limited to the *first* of the two analytical inquiries: which party bears the burden of proof "as to the *factual basis* for the disciplinary action," i.e., *whether misconduct occurred*. *Id.* at 702–04 (emphasis added). Relying on "the constitutional requirement" that a certified employee may be terminated "only for just cause," we determined that the appointing authority bears the burden of proof. *Id.* at 707. Elaborating, we explained that implicit in a certified employee's constitutional right to be "discharged on the basis of merit and fitness . . . . is the principle that an appointing authority must establish a constitutionally authorized ground . . . to discharge such an employee." *Id.* And, we continued, the forum for the appointing authority to make the requisite showing is the hearing held by or on behalf of the Board. *Id.* Otherwise, we cautioned, "there would be little check on the constitutional sufficiency of an appointing authority's standards in imposing discipline" because the procedures leading up to disciplinary action are informal and afford little protection to a certified employee accused of misconduct. *Id.*

21

¶40   It was in the specific context of determining that the appointing authority bears the burden of establishing *the factual basis* for any challenged disciplinary action that we said in *Kinchen* that "the scales are not weighted in any way by the appointing authority's initial decision to discipline the employee." *Id.* at 706. In other words, the disciplinary decision doesn't give the appointing authority a leg up in attempting to meet its burden of proving by a preponderance of the evidence the factual allegation of misconduct. We nowhere suggested in *Kinchen* that, following such a showing, review is de novo and the Board or the ALJ thus owes no deference to the appointing authority's disciplinary decision. The second analytical inquiry—whether, assuming the appointing authority proves that the alleged misconduct occurred, the disciplinary action in response to that misconduct was arbitrary, capricious, or contrary to rule or law—was not before us in that case.

¶41   Of course, if the appointing authority establishes by a preponderance of the evidence that the alleged misconduct occurred, the Board or the ALJ must turn to the second analytical inquiry. At that stage, the Board or the ALJ must review the appointing authority's disciplinary action in accordance with the statutorily mandated standard of arbitrary, capricious, or contrary to rule or law.

¶42   Inherent in the arbitrary, capricious, or contrary to rule or law standard is a degree of deference owed to the appointing authority's disciplinary action. The

22

parties engage in a tug-of-war over where exactly the deference needle rests: Does the Board or the ALJ owe the appointing authority's decision substantial deference, no deference, or some other degree of deference? We decline the invitation to settle the parties' duel. Beyond concluding that the division erred in believing that the ALJ's review here was de novo and untempered by any deference to DOC's decision, we see no need to assign our own descriptor to the amount of deference required. To our mind, the legislature has already spoken on the degree of deference due: An appointing authority's disciplinary decision may be modified or reversed only if the decision was *arbitrary, capricious, or contrary to rule or law*. Borrowing from the res ipsa loquitur doctrine in tort law, the degree of deference required is self-evident in the statutory standard. That is, the standard speaks for itself.

¶43 Here, while the division purported to honor the statutorily mandated standard of arbitrary, capricious, or contrary to rule or law, it expressly held that an ALJ is not bound by an appointing authority's disciplinary decision, need not defer to it, and conducts a de novo review of it. *Stiles*, ¶¶ 14–16. The parties, in turn, disagree on the standard the ALJ actually applied. And that disagreement is understandable because the ALJ's initial decision was ambiguous. Different parts of it can be read as applying either standard. We clarify next the two prongs of

23

the "arbitrary [or] capricious" test that are pertinent in this case and the "contrary

to rule or law" part of the standard.

## 2. The "Candid and Honest Consideration" Prong of the "Arbitrary [or] Capricious" Test

¶44    In *Lawley*, we provided guidance on part of the standard of review required

by subsection 24-50-103(6).  Specifically, we defined "arbitrary [or] capricious."

We stated that an appointing authority arbitrarily or capriciously exercises its

discretion in a disciplinary matter in three ways:

> (1) By neglecting or refusing to use reasonable diligence and care to procure such evidence as it is by law authorized to consider in exercising the discretion vested in it;
>
> (2) By failing to give candid and honest consideration of evidence before it on which it is authorized to act in exercising its discretion; or
>
> (3) By exercising its discretion in such manner after a consideration of evidence before it as clearly to indicate that its action is based on conclusions from the evidence such that reasonable people fairly and honestly considering the evidence must reach contrary conclusions.

*Lawley*, 36 P.3d at 1252 (citing *Van De Vegt*, 55 P.2d at 705).[3]

---

[3] Though *Lawley* relied on *Van De Vegt*, *Van De Vegt* did not involve disciplinary action by an appointing authority.  Rather, the issue there was whether a board of county commissioners had wrongly declined to issue Van De Vegt a liquor license to permit him to sell liquor in his drugstore.  *Van De Vegt*, 55 P.2d at 704.  It was in that context that we discussed the "three ways" in which an administrative body can exercise its discretion in a "[c]apricious or arbitrary" manner. *Id.* at 705.  We adopted these three prongs in *Lawley* to define "arbitrary [or] capricious" in the

24

¶45 These three prongs, each of which identifies a distinct *kind* of arbitrary or capricious exercise of an appointing authority's discretion, are intended to frame part of the evaluation of a disciplinary decision. Further, they align chronologically with the phases of a disciplinary decision: gathering evidence, considering evidence, and weighing evidence.

¶46 The first prong assesses whether the appointing authority "neglect[ed] or refus[ed] to use reasonable diligence and care to procure [relevant] evidence." *Id.* (quoting *Van De Vegt*, 55 P.2d at 705). At its core, this prong asks whether the appointing authority diligently gathered the evidence that "it is by law authorized to consider." *Id.* This prong is not at issue here. The ALJ did not question Warden Johnson's gathering of evidence. To the contrary, the ALJ explicitly found that the Warden had "used reasonable diligence and care to procure such evidence" as could be properly considered, including by collecting the relevant evidence and "allow[ing] [Stiles] extra time to provide any additional information." Accordingly, we confine our discussion to the second and third prongs of *Lawley*'s arbitrary or capricious test.

---

context of the Board's review of an appointing authority's disciplinary action. 36 P.3d at 1252.

¶47 The second *Lawley* prong focuses on whether the appointing authority "candid[ly] and honest[ly] considered the evidence." *Id.* (quoting *Van De Vegt*, 55 P.2d at 705). This prong is satisfied if the appointing authority considered, in good faith, the relevant evidence, including the evidence related to the factors that an appointing authority must consider under Rule 6-9 in exercising its discretion on disciplinary matters. Here's that rule again:

> The decision to take corrective or disciplinary action shall be based on the nature, extent, seriousness, and effect of the act, the error or omission, type and frequency of previous unsatisfactory behavior or acts, prior corrective or disciplinary actions, period of time since a prior offense, previous performance evaluations, and mitigating circumstances. Information presented by the employee must also be considered.

Dep't of Pers. & Admin., 4 Colo. Code Regs. 801-1:6.9 (2020).

¶48 In *Lawley*, our court agreed with the Board's decision to reverse a state university's termination of a certified employee as an arbitrary or capricious exercise of discretion. 36 P.3d at 1253. Though the termination was purportedly for financial reasons, we found that the record supported the Board's determination that the university had not given "candid and honest consideration to evidence." *Id.* at 1252. In so doing, we explained that the university's "failure to confer" with relevant parties and take "account" of proposals that would have obviated the budgetary need for termination suggested a lack of candor and honesty. *Id.* at 1251. Notably, this reasoning was premised on the Board's cabined

condemnation of the university's insincere or disingenuous consideration of the available evidence. *Id.* The Board there had not second-guessed the university's weighing of the relevant evidence or the reasonableness of the university's disciplinary decision. *Id.*

¶49 Here, the ALJ's discussion of the second *Lawley* prong can be interpreted as applying either the correct standard of review or an incorrect de novo standard. On the one hand, the ALJ both opined that "[t]he only thing that mattered to Warden Johnson was that [Stiles] had consumed marijuana" and suggested that the Warden had ignored "the extraordinary mitigating circumstances" that confronted Stiles, Stiles's "solid [work] performance," the absence of a disciplinary record, and Lieutenant DeTello's glowing remarks about Stiles. These statements imply that the ALJ found that the Warden had not candidly and honestly assessed all the relevant evidence. On the other hand, the ALJ indicated that the Warden had given "*too much weight* to . . . the speculative deleterious effects of [Stiles's] conduct while *failing to give enough weight*" to Stiles's "solid work record" and "the extraordinary mitigating circumstances" giving rise to the conduct in question. (Emphases added). These statements imply that the ALJ improperly reweighed the evidence and substituted his own judgment for that of the Warden's.

¶50 To the extent the ALJ analyzed whether the Warden had candidly and honestly considered all the relevant evidence, the ALJ correctly understood and

27

applied the second prong of *Lawley*'s arbitrary or capricious test.[4] But to the extent

the ALJ reasoned that Stiles's mitigation had not *sufficiently* affected the Warden

and that, as a result, the Warden had imposed too severe a penalty, this was error.

While the ALJ was required to ascertain whether the Warden had candidly and

honestly considered all the relevant evidence, the ALJ was not allowed to reweigh

the evidence and substitute his own judgment for that of the Warden's.

¶51     Given the lack of clarity in the ALJ's analysis of the second *Lawley* prong, we

remand with directions for further proceedings.  On remand, the ALJ should

reconsider the second *Lawley* prong and make additional findings consistent with

this opinion.

### 3.  The Third Prong of *Lawley*'s "Arbitrary [or] Capricious" Test

¶52     The third prong of *Lawley*'s arbitrary or capricious test assesses the

appointing authority's weighing of the evidence and the reasonableness of the

appointing authority's disciplinary action.  At this juncture in the analysis, the ALJ

should evaluate the weight the appointing authority accorded each item of

evidence and the disciplinary action's reasonableness.  Indeed, the third prong is

---

[4] A determination that an appointing authority failed to candidly and honestly consider the relevant evidence should ordinarily be supported by adequate credibility or veracity findings.  The ALJ did not expressly make any such findings here.

28

premised on a reasonableness inquiry. But that inquiry doesn't simply ask whether the disciplinary action was reasonable. It asks whether "reasonable [people] fairly and honestly considering the evidence must reach contrary conclusions" regarding the propriety of the disciplinary action. *Id.* at 1252 (quoting *Van De Vegt*, 55 P.2d at 705). Thus, while reasonableness is a consideration at the heart of this prong, it doesn't give an ALJ license to modify or reverse a disciplinary decision simply because, putting himself in the appointing authority's shoes, reweighing the evidence, and relying on his own views of what constitutes a reasonable sanction, he arrives at a different decision.

¶53 The ALJ didn't reach this prong of the test because he found that Warden Johnson had acted arbitrarily or capriciously under the second prong. On remand, after the ALJ determines whether the Warden candidly and honestly considered the relevant evidence under *Lawley*'s second prong, the ALJ should analyze the Warden's disciplinary decision under the third prong of *Lawley* and determine whether reasonable people fairly and honestly considering the evidence must reach a contrary conclusion.

¶54 Before we put a bow on our discussion, there is one more area we need to address—the "contrary to rule or law" aspect of the applicable legal standard. We get to it next.

### 4. The "Contrary to Rule or Law" Component of the Legal Standard

¶55 The ALJ ruled that DOC's disciplinary action was contrary to rule or law because it contravened Rule 6-9. To the extent he did so because he concluded that DOC had failed to consider some of the evidence relevant to the factors listed in Rule 6-9, his ruling—if rooted in adequate findings supported by the record—can withstand scrutiny. But to the extent he did so either because he disagreed with the weight DOC had accorded the Rule 6-9 evidence or because, in his view, termination was too severe and not "within the range of reasonable alternatives," he erred. Since the issue may come up again on remand, we briefly expand on our rejection of the ALJ's reliance on the "range of reasonable alternatives."

¶56 As we alluded to earlier, Rule 6-9 outlines various *considerations* that an appointing authority must take into account when exercising its discretion to make a disciplinary decision. But there is no mention of available disciplinary "alternatives" in Rule 6-9. And, in ruling that the Warden's decision was contrary to rule or law, the ALJ could not properly rely on his *own personal view* that termination was too severe and not "within the range of reasonable alternatives."[5]

---

[5] While we used a similar phrase—"within the range of reasonable disciplinary alternatives"—in *Maggard*, nowhere in *Maggard* did we suggest that an appointing authority acts *contrary to rule or law* if the ALJ opines that, *in his view*, the disciplinary decision is not "within the range of reasonable disciplinary alternatives." 248 P.3d at 713.

Thus, if the Warden complied with Rule 6-9 by considering the relevant evidence, he did not violate that rule by terminating Stiles.[6]

¶57 On remand, the ALJ should reconsider whether Stiles's termination was contrary to rule or law. But the ALJ must do so consistent with this opinion.

## III. Conclusion

¶58 For all the foregoing reasons, we reverse the division's judgment. We remand with instructions to return the case to the ALJ so that, in accordance with this opinion, he may make additional findings as he considers whether Stiles's termination was "arbitrary, capricious, or contrary to rule or law."[7] More specifically, the ALJ should determine whether DOC candidly and honestly considered the relevant evidence and whether reasonable people fairly and honestly considering the evidence must reach contrary conclusions. The ALJ should also address whether DOC's disciplinary action contravened any rule or

---

[6] AR 1450-36, Drug Deterrence Program, which prohibits certified state employees at DOC from using marijuana, may also be relevant to the question of whether Warden Johnson's disciplinary action was contrary to rule or law. Violations of that regulation "may result in corrective and/or disciplinary action up to, and including termination." DOC Admin. Reg. 1450-36(IV)(A)(1).

[7] We leave it in the ALJ's discretion to decide whether to permit the parties to introduce additional evidence on remand.

law.[8]  We express no opinion on how the ALJ should resolve these questions on

remand.



[8] Technically, if the ALJ finds that DOC acted arbitrarily or capriciously under one of the *Lawley* prongs or that DOC acted contrary to rule or law, his analysis may end.  But we think that the better practice is to have the ALJ address all three *Lawley* prongs and the "contrary to rule or law" component of the standard of review. Doing so will make for a better record and will give the appellate courts more flexibility on review.